## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW G. TATE, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>ATERIAN, INC., YANIV SARIG, and FABRICE HAMAIDE,<br><br>               Defendants. | Case No. 1:21-cv-04323-VM<br><br>CLASS ACTION |
| JEFF COON, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>ATERIAN, INC., YANIV SARIG, and FABRICE HAMAIDE,<br><br>               Defendants. | Case No. 1:21-cv-05163-VM<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS TO CONSOLIDATE THE RELATED ACTIONS, APPOINT ANTONIO VELARDO LEAD PLAINTIFF AND APPROVE HIS SELECTION OF LEAD COUNSEL**

011014-11/1574716 V1

## I.    PRELIMINARY STATEMENT

Presently, there are six competing motions seeking appointment as lead plaintiff: (1) Antonio Velardo ("Mr. Velardo") (ECF no. 14); (2) Joseph P. Nolff ("Nolff") (ECF no. 17); (3) Tamara Rasoumoff ("Rasoumoff") (ECF no. 20); (4) Andrew R. Zenoff ("Zenoff") (ECF no. 24); (5) Hungen Lin ("Lin") (ECF no. 28); and (6) Boris Kerzhner ("Kerzhner") (ECF no. 31).[1] Only one movant, Mr. Velardo, has shown that he is "the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

Under the PSLRA, the Court is to appoint the "most capable" plaintiff as lead plaintiff – the movant who has the greatest financial stake in the outcome of the case, ***so long as*** that plaintiff meets the requirements of Rule 23. Here, Mr. Velardo is demonstrably the "most capable" plaintiff, since he is the movant with the largest financial interest, who also satisfies Rule 23's requirements. 15 U.S.C. §78u- 4(a)(3)(B)(iii)(I)(bb)-(cc).

As reflected in the loss calculation chart below, Mr. Velardo individually has suffered losses in excess of $103,000, which are purportedly exceeded only by the claimed losses of Nolff and Zenoff. But as explained further below and in the accompanying revised loss charts,[2] Nolff is inadequate, and Zenoff's actual recoverable losses are significantly exceeded by those of Mr. Velardo.

| Competing Movant | Claimed Loss |
|---|---|
| Antonio Velardo | $103,815.00 |
| Joseph P. Nolff | $472,825.00 |

---

[1] Movant Lin filed a notice of non-opposition to the competing motions. ECF No. 38.

[2] *See* Declaration of Nathaniel A. Tarnor in Further Support of Motion of Antonio Velardo For Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of His Selection of Lead Counsel ("Tarnor Decl."), Exs. A and B.

| | |
|---|---|
| Andrew R. Zenoff | $119,011.73 |
| Tamara Rasoumoff | $57,819.51 |
| Boris Kerzhner | $25,773.95 |
| ~~Hungen Lin~~ | ~~$14,687.00~~ |

Nolff, who claims to have suffered the largest loss, has not provided any information about himself, his background, or his ability to lead this action, and has therefore failed to demonstrate his adequacy under Rule 23. *See e.g.*, *In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634, at *1 (S.D.N.Y. Sep. 11, 2020) (requiring "a threshold amount of information regarding an individual movant's background and sophistication" for "even a preliminary showing of adequacy").

Zenoff, who claims the next largest loss, has inflated his losses by including purchases and associated losses from sales made before May 4, 2021, the date of the alleged corrective disclosure. Such losses "are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements."[3] Excluding losses from Zenoff's pre-corrective disclosure purchases and corresponding sales results in Zenoff having losses of **$112,587.98**– significantly smaller than Mr. Velardo's losses when a similar approach is used to asses Mr. Velardo's losses – **$141,360.00** (hereinafter referred to as "*Dura* losses").[4]

Mr. Velardo, in contrast, has made a *prima facie* showing of his typicality and adequacy. Here, Mr. Velardo has shown that he suffered *Dura* losses of $141,360.00 on his purchases of Aterian securities during the Class Period. Mr. Velardo has identified himself to the Court as an entrepreneur and a sophisticated investor residing in Spain, who has both the interest and the

---

[3] *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) (citing *Dura Pharm. v. Broudo*, 544 U.S. 336, 342–43 (2005)).

[4] Tarnor Decl., Exs. A and B.

motivation to oversee this litigation. ECF No. 15, at 6. Moreover, Mr. Velardo has demonstrated his adequacy given his significant financial stake and ability to zealously prosecute the class's claims. The Court can therefore be assured that Mr. Velardo will deliver the vigorous, investor-driven representation to which the Class is entitled.

Having satisfied these two steps, Mr. Velardo is entitled to a strong presumption that he is the "most adequate plaintiff." That presumption can only be rebutted "upon proof" that Mr. Velardo is inadequate or atypical. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). There are no facts, let alone any "proof," suggesting that Mr. Velardo is somehow unfit to represent the Class.

Finally, the Court should reject the remaining movants as having smaller losses than Mr. Velardo.

Accordingly, the Court should appoint Mr. Velardo Lead Plaintiff and approve his choice of counsel.

## II.   ARGUMENT

### A.   Nolff Has Not Made a *Prima Facie* Showing of Adequacy and Typicality and Should Not Be Appointed.

Nolff, who purports to have suffered a larger loss than Mr. Velardo, should not be appointed Lead Plaintiff as he has not made a *prima facie* showing of adequacy and typicality. Nolff provided no information about himself in his lead plaintiff motion, and thus failed the basic requirements for any lead plaintiff. *See e.g., Karp v. Diebold Nixdorf, Inc.,* 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("Here, the [competing movants] have provided the Court with little to go on with respect to their alleged capacity to manage this litigation […] Given this lack of information, the Court is skeptical that the [competing movants] are equipped to serve as lead plaintiff."); *Camp v. Qualcomm Inc.,* 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (finding

3

movant did not satisfy Rule 23's typicality requirement because he "failed to include any basic details about himself, including where he lives or who he is specifically in his motion").

Movants for Lead Plaintiff must make a *prima facie* showing that they satisfy "the typicality and adequacy requirements" of Rule 23. *Chauhan v. Intercept Pharms.*, 2021 WL 235890, at *3 (S.D.N.Y. Jan. 25, 2021). But "even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication." *In re HEXO Corp. Sec. Litig.*, 2020 WL 5503634, at *1. Here, Nolff's motion fails to inform the Court of any of the most basic information needed for the Court to make its determination. For instance, he did not provide anything about his background, investing experience, profession, or anything suggesting he is capable of leading a complex securities class action.[5] As the court in *Boeing*, 2019 WL 6052399, at *5 noted:

> **The complete dearth of information accompanying the [movants]' lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation potentially involving thousands of claims for tens, or perhaps hundreds, of millions of dollars** and provides no assurance to the Court that the concerns prompted by the unusual course of the [movants] trading activity are unwarranted.

So too here, the Court here is left with no basis to assess Nolff's adequacy to lead this action. The paucity of information disqualifies him as Lead Plaintiff because he has not shown that he "will fairly and adequately protect the interests of the class."[6]

---

[5] *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (rejecting movants who provided no information about their "level of financial sophistication or about the general source of their wealth; no general information about their backgrounds, education, employment, or investment experience; no information about their litigation experience generally or any basis to gauge their ability to control and manage complex class action securities litigation.").

[6] Fed. R. Civ. P. 23(a)(4); *see also Qualcomm*, 2019 2019 WL 277360, at *3 (rejecting movant who "failed to include any basic details about himself, including where he lives or who he is specifically in his motion," which made it "difficult" for the court "to determine whether

4

For these reasons, in light of the fact that Nolff provided no substantive information about himself, he has failed to demonstrate his adequacy and typicality, and the Court should deny his motion outright.

**B.    Zenoff's *Dura* Losses Are Significantly Smaller Than Mr. Velardo's.**

The Court should also exclude losses from Zenoff's pre-corrective disclosure purchases and corresponding sales. Zenoff's loss calculations include trading losses he realized before the truth about Aterian's business was revealed on May 4, 2021 by Culper Research's analyst report. "Under *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342–43 (2005), [however,] such losses are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements." *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013). In other words, "under *Dura* and its progeny, any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).

"While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint [lead plaintiff and] lead counsel." *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 WL 6145114, at *3. When evaluating a plaintiff's financial interest for

---

[he] would indeed be a typical plaintiff for the class"); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733-34 (S.D. Ind. 2000) (rejecting individual movant and citing lack of information about background and qualifications); *In re Gemstar-Tv Guide Int'l Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) ("In short, the Gads provide no briefing and proffer no declarations concerning their ability to act as lead plaintiffs."); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1304-05 (M.D. Fla. 2000) (same).

purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures.[7]

Indeed, "the court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff appointment] stage." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (*quoting In re Comverse*, 2007 WL 680779, at *5). Accordingly, "'losses result[ing] from "in-and-out" transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public' are not to be included in loss calculations" for purposes of selecting lead plaintiff. *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 238 (E.D.N.Y. 2011) (quoting *In re Comverse*, 2007 WL 680779, at *3).

Here, while Zenoff claims a loss of $119,011.73 (ECF No. 26-3), he sold 4,300 of the 9,200 shares he purchased during the Class Period (or 46.7%) well before the alleged corrective disclosure on May 4, 2021.[8] "Losses" from these in-and-out transactions are not recoverable, and therefore do not count. *See, e.g., Africa v. Jianpu Tech., Inc.*, 2021 WL 1999467, at *2 (S.D.N.Y.

---

[7] *See Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *Khunt v. Alibaba Grp. Holding Ltd.,* 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."); *Gutman v. Sillerman*, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) ("[W]hen evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures.") (collecting cases); *Comverse Tech.*, 2007 WL 680779, at *4 ("any losses that [the movant] may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation" and "any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff").

[8] *See* ECF No. 26-3 (Zenoff Loss Calculation) (indicating sales of 2,150 shares on February 17, 2021, and 2,150 shares on February 18, 2021).

May 19, 2021) ("[a]ny losses incurred based on 'in-and-out' trades — where an investor buys stock and sells it during the class period but before any disclosures — should not be considered.") (citation omitted); *CannaVest*, 93 F. Supp. 3d at 273. When these transactions are removed from Zenoff's loss calculation, his true *Dura* losses are only **$112,587.98** – compared to **$141,360.00** for Mr. Velardo.

As such, Zenoff's losses, when compared to Mr. Velardo's are as follows:

| Movant | LIFO Losses Excluding Ins-and-Outs |
|---|---|
| Mr. Velardo | $141,360.00 |
| Zenoff | $112,587.98 |

For the foregoing reasons, the Court should deny Zenoff's motion.

**C.      The Remaining Movants Have Significantly Smaller Losses Than Mr. Velardo and Are Otherwise Inadequate**

The remaining movants claim to have suffered losses which are substantially less than Mr. Velardo's losses, and none have rebutted the presumption that Mr. Velardo is the most adequate plaintiff. Rasoumoff claims a loss of only $57,819.51 (ECF no. 22-2), and Kerzhner claims a loss of only $25,773.95 (ECF no. 33-3). Lin filed a notice of non-opposition to the competing motions. ECF No. 38. Accordingly, the motions of the remaining movants should be denied.

**D.      Mr. Velardo Is the Most Adequate Plaintiff**

Mr. Velardo is the ideal lead plaintiff. He has suffered $141,360.00 in *Dura* losses as a result of Defendants' alleged wrongdoing, demonstrating that he has "a sufficient interest in the outcome to ensure vigorous advocacy." *Husson v. Garrett Motion, Inc.*, 2021 WL 211541, at *3 (S.D.N.Y. Jan. 21, 2021) (citation omitted). Mr. Velardo is well-qualified to take on the Lead Plaintiff role. He is a business entrepreneur and private investor who has the sophistication and interest to ensure this case is vigorously prosecuted. ECF No. 15, at 6. He also understands what his responsibilities would entail as Lead Plaintiff and has knowingly accepted these

responsibilities. ECF No. 16-1. In addition, as discussed further below, Mr. Velardo has vetted and retained experienced and competent counsel to represent the Class.

**E.      Mr. Velardo Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). In making this determination, the PSLRA states that a court is not to disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

For the reasons articulated in Mr. Velardo's opening brief (ECF Nos. 15-16), Mr. Velardo's choice of counsel should be approved. Hagens Berman is a leading securities class action law firm and has an established track record obtaining successful recoveries for investors in securities class actions. *See* ECF No. 16-4 at 31-32. Accordingly, the Court may be assured that by granting this Motion, the Class will receive the highest caliber of legal representation.

### III.    CONCLUSION

For all of the foregoing reasons, Mr. Velardo respectfully requests that this Court: (1) consolidate the Related Actions; (2) appoint him to serve as lead plaintiff in this action; (3) approve his selection of Hagens Berman as lead counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

In the alternative, should the Court deem it more appropriate, Mr. Velardo requests that the Court appoint himself and Zenoff as co-Lead Plaintiffs, and approve their selection of Hagens Berman and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as co-Lead Counsel for the Class. Mr. Velardo and Zenoff have no interests adverse to each other, and each have an interest in making sure that the class is adequately represented. Moreover, Hagens Berman and Robbins

Geller have a history of working with each other and can litigate this case effectively and efficiently.

Respectfully submitted,

DATED:  July 26, 2021                                HAGENS BERMAN SOBOL SHAPIRO LLP

By     */s/ Nathaniel A. Tarnor*
          NATHANIEL A. TARNOR

322 8th Avenue, Suite 802
New York, NY10001
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
nathant@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
Wesley A. Wong
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff Antonio Velardo*

9

**CERTIFICATE OF SERVICE**

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Nathaniel A. Tarnor*
NATHANIEL A. TARNOR

10