**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH P. NOLFF, ANDREW TATE and BRUCE PALENSKE, Individually and On Behalf of All Others Similarly Situated, | **CASE No.: 1:21-cv-04323-VM** |
| Plaintiffs, | |
| v. | |
| ATERIAN, INC., YANIV SARIG, FABRICE HAMAIDE, and ARTURO RODRIGUEZ, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND <u>ESTABLISHING NOTICE PROCEDURES</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT ..................................... 2

    A.  Procedural History ................................................................................................ 2

    B.  Settlement Negotiations ........................................................................................ 3

III. THE COURT SHOULD PRELIMINARY CERTIFY THE PROPOSED SETTLEMENT
     CLASS FOR SETTLEMENT PURPOSES ONLY ............................................................ 3

    A.  Numerosity ............................................................................................................ 4

    B.  Commonality ......................................................................................................... 5

    C.  Typicality .............................................................................................................. 5

    D.  Adequacy .............................................................................................................. 6

        1.  Adequacy of the Proposed Class Representatives ...................................... 7

        2.  Rule 23(g) Adequacy of the Proposed Class Counsel ............................... 7

    E.  Common Questions Predominate and the Class is Superior to Other Methods of
        Adjudication .......................................................................................................... 8

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........ 10

    A.  Standards for Preliminary Approval ................................................................... 10

    B.  The Settlement is Procedurally and Substantively Fair ..................................... 12

    C.  Public Policy Favors Settlement of Securities Class Actions ............................ 13

    D.  The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined
        by Rule 23(e)(2) and the Remaining *Grinnell* Factors .................................... 13

        1.  Plaintiffs and Lead Counsel Have Adequately Represented the Class .................... 14

        2.  The Proposed Settlement Is the Result of Good Faith, Arm's-Length
            Negotiations by Informed, Experienced Counsel .................................... 14

        3.  The Substantial Benefits for the Class, Weighted Against the Costs, Risks and
            Delay of Trial and Appeal Support Preliminary Approval ...................... 15

            a)   The Complexity, Expense, and Likely Duration of the Litigation .............. 16

   b) The Risk of Establishing Liability and Damages ........................................ 18

  4. The Proposed Method for Distributing Relief Is Effective ...................................... 19

  5. Attorneys' Fees, Litigation Expenses, and Award to Plaintiffs .............................. 19

  6. The Settling Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs ........................................................................................................ 20

  7. There is No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably ........................................................................................ 20

  8. The Remaining *Grinnell* Factors Support Preliminary Approval ........................... 21

V. THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ........................................................................................ 23

VI. PROPOSED SCHEDULE OF EVENTS ........................................................................ 25

VII. CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ................................ 9

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................................ 3, 4, 9

*Baker v. SeaWorld Ent., Inc.*,
    No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 24

*Cagan v. Anchor Sav. Bank FSB*,
    No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ................................................................................................... 4

*Cheng Jiangchen v. Rentech, Inc.*,
    No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................ 15

*Christine Asia Co. v. Yun Ma*,
    No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................ 7, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................................ 11, 16

*Consol. Edison, Inc. v. Ne. Utilities*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) .................................................................................. 23

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ...................................................................................................... 4

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) .................................................................................................... 14

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................................................. 21

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) ............................................................................................ 9

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ............................................................................................ 7

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990) ..................................................................................... 6

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................ 19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ..................................................................................... 17

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................... 20

*In re "Agent Orange" Prod.* Liab. Litig.,
   597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................................... 22

*In re Ability Inc. Sec. Litig.*,
   No. 1:16-CV-03893 (VM), 2018 WL 11300489 (S.D.N.Y. Sept. 17, 2018) ........................... 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..................................................................................... 24

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................... 16, 21

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
   No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ............................... 19

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ..................................................................... 10, 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................... 5, 6, 7, 13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ..................................................................................... 5

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ..................................................................................... 8

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................... 5, 17, 23

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................... 13, 22

*In re Indep. Energy Holdings PLC*,
   No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...................... 14, 23

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................................. 12

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................... 6, 7, 10, 17

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................................... 22

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................................ 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................................... 11, 12

*In re Platinum & Palladium Commodities Litig.*,
   No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ................................................ 12

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................... 15

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................................... 16

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................................... 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................... 16

*In re Stock Exchanges Options Trading Antitrust Litig.*,
   No. 99 CIV.0962(RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005) .................................... 10

*In re Take Two Interactive Sec. Litig.*,
   No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ............................... 20

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) .......................................... 20

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................................ 4, 5, 6

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) ...................................................................................................... 5

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................................. 4

*Lea v. Tal Educ. Grp.*,
No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........................ 12, 19

*Leung v. Home Boy Rest. Inc.*,
No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................................... 14

*Marisol A. by Forbes v. Giuliani*,
929 F. Supp. 662 (S.D.N.Y. 1996) ............................................................................................... 6

*Mikhlin v. Oasmia Pharm. AB*,
No. 19CV4349NGGRER, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ................................... 15

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ......................................................................................... 16

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ......................................................................................................... 23

*Palacio v. E\*TRADE Fin. Corp.*,
No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) .......................... 13

*Pasini v. Fishs Eddy, LLC*,
No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018) .............................. 20

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........................................................................................................................ 9

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ........................................................................................................... 4

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 23

*Spann v. AOL Time Warner Inc.*,
No. 02 CIV. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ..................................... 13

*Vargas v. Cap. One Fin. Advisors*,
559 F. App'x 22 (2d Cir. 2014) ................................................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................................................... 14

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ............................................................................................................. 3

*Yedlowski v. Roka Bioscience, Inc.*,
No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................................ 8

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................. 19

15 U.S.C. § 78u-4(a)(7) ............................................................................................ 23, 25

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 1, 13, 23

Fed. R. Civ. P. 23(a) .......................................................................................... 3, 4, 8, 11

Fed. R. Civ. P. 23(a) .................................................................................................... 4

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 4

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 5

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 6

Fed. R. Civ. P. 23(b) ................................................................................................... 4

Fed. R. Civ. P. 23(b)(3) ......................................................................................... passim

Fed. R. Civ. P. 23(b)(3)(D) ........................................................................................ 4, 9

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................................... 17

Fed. R. Civ. P. 23(c)(2) ........................................................................................... 23, 25

Fed. R. Civ. P. 23(e) .......................................................................................... 12, 15, 23

Fed. R. Civ. P. 23(e)(1) .............................................................................................. 11

Fed. R. Civ. P. 23(e)(1)(A)-(B)(i) ................................................................................ 13

Fed. R. Civ. P. 23(e)(2) ................................................................................. 10, 11, 13, 21

Fed. R. Civ. P. 23(e)(2)(A)-(D) .................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 20

Fed. R. Civ. P. 23(e)(3); and (D) ................................................................................. 11

Fed. R. Civ. P. 23(g) ..................................................................................................... 7

Fed. R. Civ. P. 23(h)(1)..................................................................................... 25

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788 (1986)............... 9

Manual for Complex Litigation (Fourth) § 21.632....................................................... 4

Newberg on Class Actions § 11:25 (4th ed. 2002) ...................................................... 11

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff Joseph Nolff ("Nolff") and Named Plaintiff Bruce Palenske ("Plaintiffs") respectfully submit this memorandum in support of the Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION[1]

Plaintiffs and Aterian, Inc. ("Aterian" or the "Company"), Yaniv Sarig, Fabrice Hamaide, and Arturo Rodriguez ("Defendants"), have agreed to settle this Action for $1,300,000 by the terms stated in the Stipulation. By this motion, Plaintiffs respectfully request the Court enter an order: (1) preliminarily certifying the Settlement Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling a Final Approval Hearing ("Settlement Hearing") at which the Court will consider the request for final approval of the proposed Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and case contribution awards, and entry of the Final Judgment.

The Settlement was achieved only after substantial arm's-length negotiations with the aid of nationally regarded mediator Robert A. Meyer, Esq. of JAMS. The immediate cash settlement provides a guaranteed recovery for Settlement Class Members. This is a highly favorable outcome as the Settlement obtains over 36% of Plaintiffs' maximum damages in light of several obstacles Plaintiffs faced with ongoing litigation, including proving liability and damages. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class Members' best interest. Similarly, the proposed content and manner of providing notice satisfies requirements imposed by Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. Thus, the Court should preliminarily approve the Settlement.

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation") dated April 22, 2022 and filed herewith.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

This litigation was commenced on May 13, 2021 styled as *Tate v. Aterian, Inc., et. al.,* 21-cv-04323-VM, alleging violations of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants. On June 10, 2021, a similar putative class action styled as *Coon v Aterian, Inc., et. al.,* 21-cv-05163-VM was filed. After briefing on competing motions seeking consolidation and appointment of lead plaintiff and lead counsel, on August 10, 2021, the Court consolidated the pending actions, appointed Nolff as Lead Plaintiff, and appointed The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel.

On October 12, 2021, Plaintiffs filed an amended consolidated complaint. In the amended consolidated complaint, Plaintiffs alleged that Defendants made a series of materially false and misleading statements beginning on August 24, 2020, which was revealed by an alleged corrective disclosure on May 4, 2021. (Dkt. No. 55 ¶¶ 61, 82.)[2] On November 3, 2021, with Defendants' consent, Plaintiffs filed the second amended consolidated complaint. On December 23, 2021, Aterian filed with the U.S. Securities and Exchange Commission ("SEC") amended Form 4s, revising previous disclosures about individuals' trades during the Class Period. In response to these amended Form 4s, pursuant to the parties' agreement, on January 5, 2022, Plaintiffs filed the

---

[2] In the introduction, the amended complaints inadvertently described the class period as commencing on December 1, 2020 (Dkt. No. 55, ¶ 1; Dkt. No. 75 ¶ 1). Consistent with the substantive allegations of the amended complaints, however, the Settlement Class consists of purchasers of Aterian securities during the entire allegedly impacted period, from August 24, 2020, through May 3, 2021, inclusive.  *See* Stipulation, ¶1.31; (*see also* Dkt. No. 55, ¶61; Dkt. No. 75, ¶63).

operative Third Amended Class Action Complaint for Violation of The Federal Securities Laws ("Complaint"). On January 17, 2022, pursuant to Judge Marrero's Individual Practices, Defendants transmitted to Plaintiffs and the Court pre-motion to dismiss letters. On February 7, 2022, Plaintiffs transmitted to Defendants and the Court their response letters. Prior to the deadline for Defendants' reply letters, the Settling Parties stipulated to, and the Court granted, an extension for Defendants to file these letters to March 18, 2022.

### B.    Settlement Negotiations

In January 2022, while continuing to litigate the Action, the Settling Parties agreed to a parallel mediation in an attempt to settle the Action. On March 9, 2022, the Settling Parties participated in a mediation session with Mr. Meyer of JAMS. Prior to the mediation session, the Settling Parties prepared and exchanged detailed mediation statements, including their respective analyses of damages and loss causation. The Settling Parties reached a settlement in principle on March 10, 2022. On March 17, 2022, the Settling Parties executed a Memorandum of Understanding broadly setting forth the terms of the Settlement, in principle. The Settling Parties alerted the Court to the Settlement, in principle, and, on March 18, 2022, the Court ordered a stay of all proceedings, pending its consideration of Plaintiffs' anticipated motion for preliminary approval of the Settlement (Dkt. No 81).

### III.    THE COURT SHOULD PRELIMINARY CERTIFY THE PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY

In preliminarily approving the proposed Settlement, this Court must consider whether to certify the Settlement Class settlement under Rules 23(a) and (b)(3). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, the Court should

determine that the proposed settlement class is a proper class for settlement purposes. *Amchem*, 521 U.S. at 620; *Manual for Complex Litigation* (Fourth) § 21.632. To certify a class, the Court must determine whether four threshold requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Rule 23(b). *Id.* at 614. In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Further, at this point, the Court need not conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class meets the requirements of and satisfies Rule 23(a) and 23(b)(3).

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable." "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and Plaintiffs must only show "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Moreover, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).[3] Here, there are likely hundreds,

---

[3] *See also In re Vivendi Universal, S.A.,* 242 F.R.D. 76, 83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) ("Precise quantification of the class members

if not thousands, of potential Class Members while millions of Aterian securities were publicly traded on NASDAQ during the Class Period. Thus, the numerosity requirement is met.

### B.    Commonality

Commonality requires that "questions of law or fact [are] common to the class." *EVCI*, 2007 WL 2230177, at *13. Securities class actions are particularly well-suited to class treatment as the commonality requirement "is applied permissively." *Id*; *Vivendi*, 242 F.R.D. at 84. Commonality does not mean that all class members must make identical claims and arguments, but only that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). The common issue must be "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Commonality is satisfied if the plaintiffs charge defendants with a common course of misconduct, such as making misrepresentations in the company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Here, commonality is met due to common questions of law and fact pertaining to whether false statements of material fact were made in Aterian's public statements, whether the statements were made with scienter, the extent of damages Settlement Class Members sustained, and the appropriate measure of damages.

### C.    Typicality

The Rule 23(a)(3) typicality requirement is fulfilled when "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the

---

is not necessary because a court may make common sense assumptions regarding numerosity"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007) (numerosity requirement is generally met in cases involving nationally traded securities.).

proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical. *EVCI*, 2007 WL 2230177, at *13; *Vivendi*, 242 F.R.D. at 85 ("[P]laintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims. Such allegations are generally considered sufficient to satisfy the typicality requirement"). Particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). The critical question is whether the proposed class representatives and the class can point to Defendants' "common course of conduct" to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

Plaintiffs alleged a common course of unlawful conduct affecting all Settlement Class Members. Each purchased Aterian securities during the Class Period based on Defendants' allegedly materially false and misleading statements and was harmed in the same manner. Plaintiffs' claims stand or fall with those of the Settlement Class and thus, they are typical.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: first, a showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, that the representative parties' counsel is qualified,

experienced, and able to conduct the proposed litigation vigorously. *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. *Marsh & McLennan*, 2009 WL 5178546, at *10. Pursuant to Rule 23(g), adequacy of proposed class counsel is considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

### 1.    Adequacy of the Proposed Class Representatives

Plaintiffs do not have interests antagonistic to those of the proposed Settlement Class Members. The proposed class representative purchased Aterian securities during the Class Period and were damaged thereby. The proposed class representatives are seeking, on their own behalf and on behalf of all members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct. Since their interests are congruent with the interests of other Settlement Class Members, Plaintiffs should be deemed the Class Representatives.

### 2.    Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

Lead Counsel is experienced in prosecuting class actions having successfully prosecuted securities class actions in this Court and courts throughout the country. Courts have consistently found Rosen Law to be well suited as class counsel in securities class actions. *See Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that

"[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case …").[4] Further, Lead Counsel's firm resume, documenting its experience and successes, was filed as Docket No. 19-4.

Rosen Law utilized its skills and resources to reach the Settlement. Lead Counsel's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. The Settlement was achieved after Lead Counsel spent considerable time for the benefit of Aterian shareholders. Lead Counsel's work included conducting a thorough investigation, including retaining a private investigator and experts; drafting several pleadings, including the Complaint; opposing Defendants' pre-motion to dismiss letters; and participating in the mediation and settlement discussions, including drafting a mediation statement. Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### E.    Common Questions Predominate and the Class is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy the predominance and superiority criteria.

"The focus of the predominance inquiry is on defendants' liability, not on damages."

---

[4] *See also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ([T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation").

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Here, the existence of common questions predominates over individual issues, exemplified by the fact that if each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *Amchem*, 521 U.S. at 625.

> Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[5]

This Court should balance the merits of certifying a class against other possible methods of adjudication. Given the complex nature of securities class actions, the large numbers of geographically dispersed class members, and the high costs associated with individualized actions, it is unlikely that most Settlement Class Members would be able to obtain relief without class status. Without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no

---

[5] As this is a settlement in lieu of a trial, the Rule 23(b)(3)(D) inquiry is not required. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12. Moreover, any Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement. Thus, a class action is the superior method of adjudication and satisfies the requirements of Rule 23(b)(3). Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rule 23(b)(3). As such, the Court should preliminarily certify the Settlement Class for settlement purposes only, consisting of:

> all persons who purchased or otherwise acquired Aterian securities between August 24, 2020, and May 3, 2021, both days inclusive ("Class Period"), excluding: (i) the officers and directors of Aterian and its affiliates and subsidiaries; (ii) members of the officers' and directors' immediate families and their legal representatives, heirs, successors or assigns; (iii) any entity in which Defendants have or had a controlling interest; and (iv) Opt-Outs.
> Stipulation, ¶1.31.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Standards for Preliminary Approval

Class action settlements require court approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013). "Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 CIV.0962(RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). For preliminary approval, "courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). The preliminary evaluation's purpose is to identify "terms [that] are unacceptable at the outset," and which would render "notice to the class, with its attendant expenses, and a hearing . . . futile

gestures." Newberg on Class Actions § 11:25 (4th ed. 2002).

Pursuant to Rule 23(e)(1), the Court must consider whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2)—which governs final approval—requires courts consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

> (2)    ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Additionally, in evaluating a settlement, the Second Circuit directs courts to consider the *Grinnell* factors which are the: (1) complexity, expense, and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[6] Courts

---

[6] The Rule 23(a) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, in determining whether a settlement will likely be approvable under Rule 23(e)(2), the court "considers the Rule 23(e)(2) factors, and then considers additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Id.*

however, cannot "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—is premature at this stage. *Id.*

The Settlement merits preliminary approval and the Court should approve the Settling Parties' requested form, manner and schedule for notice, final approval, and related events because these will fairly apprise the Settlement Class of the Settlement terms and give them adequate opportunity to file claims in, submit objections to, or exclude themselves from, the Settlement.

### B.    The Settlement is Procedurally and Substantively Fair

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *Platinum & Palladium*, 2014 WL 3500655, at *11. A settlement is procedurally fair when well-informed counsel ended in arm's-length negotiations. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). Likewise, a settlements is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e) and *Grinnell* factors. *Id.*, at *9. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at *11. Here, the Settlement is both procedurally and substantively fair.

### C.    Public Policy Favors Settlement of Securities Class Actions

The law favors settlement, particularly in complex, class actions, because they require substantial judicial resources, consume the parties' time and money, and litigation resolution is usually significantly delayed. *See Palacio v. E*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *7 (S.D.N.Y. June 22, 2012). [7]Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *12. This strong judicial policy applies here.

### D.    The Settlement is Fair, Reasonable, and Adequate in Light of the Factors Outlined by Rule 23(e)(2) and the Remaining *Grinnell* Factors

At this stage, courts undertake a preliminary review of the Rule 23(e)(2) factors in determining that the Settlement merits granting preliminary approval and directing notice of the Settlement to be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B)(i). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the relief to the Class is adequate; and (d) the Settlement treats Class Members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(A)-(D). Further, because the amendments to Rule 23 did not displace the Second Circuit's existing *Grinnell* test, it is appropriate to consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a

---

[7] *Spann v. AOL Time Warner Inc.*, No. 02 CIV. 8238DLC, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'").

greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.

### 1.    Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have diligently prosecuted this Action including reviewing and investigating the facts in this case which included retaining an investigator and experts, drafting several pleadings including the Complaint, responding to Defendants' pre-motion to dismiss letters, and negotiating a favorable settlement, including drafting a detailed mediation statement, that provides immediate recovery to Settlement Class Members.

### 2.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel

Courts initially presume that a settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties…"). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").[8]

The Parties participated in a mediation session with Mr. Meyer of JAMS. Prior to the mediation, the Parties exchanged detailed mediation submissions. With Mr. Meyer's assistance,

---

[8] *See also In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

14

the mediation was successful. The settlement discussions were at all times hard-fought and at arm's-length, producing a result that Plaintiffs and Lead Counsel believe to be in the Settlement Class's best interest. The arm's-length nature of the negotiations and Mr. Meyer's involvement support the conclusion that the Settlement is fair and was achieved free of collusion.[9]

### 3. The Substantial Benefits for the Class, Weighted Against the Costs, Risks and Delay of Trial and Appeal Support Preliminary Approval

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This section of Rule 23(e) "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations omitted).

The proposed Settlement provides a cash payment of $1,300,000 for the benefit of the Settlement Class. This is a highly favorable result particularly given the significant risks of continued litigation. Plaintiffs' expert estimates the best case scenario damages to be at most $3,600,000. If Plaintiffs overcame all the obstacles to establish liability, and prevailed on all of their loss causation and damages theories, the $1,300,000 Settlement would recover approximately 36% of the total **maximum** damages **potentially** available in this Action. The Settlement is a favorable outcome particularly compared to other cases with this range of damages. In comparison,

---

[9] *See In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *8 (E.D.N.Y. Jan. 21, 2022) (finding settlement reached as a result of mediation before Mr. Meyer weighs in favor of approval); *see also Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (same).

Cornerstone Research found that for cases with damages estimated under $25 million, between 2011 and 2019, the median recovery was 16.8% and for 2020 was 19.7%. See Exhibit 1 to the Declaration of Jacob A. Goldberg ("Goldberg Decl."). Further, according to NERA Economic Consulting, in 2021, the median ratio of settlement to investor losses for securities class actions was approximately 1.8% of estimated damages. attached as Exhibit 2 to Goldberg Decl. Thus, the recovery the Settlement provides exceeds the median recovery realized in securities class action cases. It is also above recoveries courts have declared reasonable. *See Grinnell,* 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair").[10] As such, the Settlement falls well within the range of possible approval.

### a) The Complexity, Expense, and Likely Duration of the Litigation

"Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'" *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *see also, In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damage"). The Settlement provides a guaranteed, immediate recovery. If the Settlement were not reached, the Settling Parties would have to incur substantial costs and engage in prolonged litigation through a decision on the motions to dismiss the Complaint,

---

[10] *See also Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5%-6.2% of estimated losses).

discovery, class certification, summary judgment, trial and, if applicable, subsequent appeals. Discovery costs, including document production and hosting fees as well as experts, including for class certification, expert reports, and expert testimony would be significant and could easily exceed hundreds of thousands of dollars for Plaintiffs.

Additionally, although Plaintiffs believe a class would be certified, there is no certainty as Defendants would have opposed Plaintiffs' motion for class certification. To certify a class, Plaintiffs must show that Aterian's securities traded on an efficient market, entitling purchasers to the presumption of reliance on Defendants' allegedly materially false statements. Defendants would have been permitted to rebut the presumption by showing that the false statements did not have an impact on Aterian's stock price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Accordingly, there is a risk that the Court could deny class certification and, even if Plaintiffs were able to certify a class, there is no guarantee that a class would remain certified through trial as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Here, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6. The Settlement avoids the uncertainty with respect to maintaining certification and, thus, supports approval of the Settlement.

The Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses. There is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery; and even if they could do so, it would be costly, take years, and delay any potential recovery to Settlement Class Members. Thus, the

complexity, expense, and likely duration of these proceedings favor the Settlements' approval.

### b) The Risk of Establishing Liability and Damages

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Although Plaintiffs believe they would be successful defeating anticipated motions to dismiss, there is no guarantee that the Court would find that Plaintiff pled a claim. Defendants would have contended, among other things, that Plaintiff failed to adequately allege that the Company made any false or misleading statements regarding the Company's artificial intelligence platform, AIMEE, and would have argued that the Company's filings and disclosures regarding AIMEE were entirely accurate. Defendants would have further contended that, even if any of their statements were allegedly false or misleading, Plaintiff failed to adequately allege that any such statements were made with the intent to mislead investors or with deliberate recklessness. Defendants would have further argued that Plaintiffs failed to adequately allege that the claimed drop in Aterian stock was caused by the alleged misstatements and failed to distinguish the ongoing decrease in the market value of Aterian stock during the latter part of the Class Period from any drop associated with the alleged corrective disclosure.

Additionally, to survive a summary judgment motion, Plaintiffs would need to prove, not merely allege, that Defendants' statements were false and misleading, that Defendants acted with scienter, and that Defendants' misstatements caused the losses of investors in Aterian's securities. If they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. Even if Plaintiffs won at trial, they would have to survive Defendants' inevitable appeals. Through this entire period, every hour Defendants' attorneys worked would diminish the funds available to fund a settlement or pay a judgment. And if Defendants' loss causation, damages, or other arguments were accepted, the maximum damages that could be established at trial might have been even lower than Plaintiffs' estimate of damages

and, of course, Plaintiff may have lost at the motion to dismiss, summary judgment, trial, or appeal stages on some or all of their claims, resulting in a recovery of little or nothing. The Settlement avoids these genuine risks.

### 4.    The Proposed Method for Distributing Relief Is Effective

As discussed on pages 23 to 25, the method of the proposed notice and claims administration process are effective. The claims process includes a standard form that requests the information necessary to calculate claims pursuant to the Plan. The Plan governs how Settlement Class Members' claims will be calculated and how money will be distributed to Authorized Claimants. Plaintiffs' damages expert and Lead Counsel prepared the Plan.

### 5.    Attorneys' Fees, Litigation Expenses, and Award to Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $40,000. This fee request is in line with other settlements approved in this District. *See e.g., In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (Marrero, J.) (awarding attorneys' fees of 33.33% of settlement fund).[11]   Further, as explained in the proposed notice, Plaintiffs intend to request an amount not to exceed $40,000 for reasonable costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

---

[11] *In re Ability Inc. Sec. Litig.*, No. 1:16-CV-03893 (VM), 2018 WL 11300489, at *1 (S.D.N.Y. Sept. 17, 2018) (Marrero, J.) (awarding attorneys' fees of 33.3% of settlement fund); *Tal Educ.,* 2021 WL 5578665, at *12 (requests for one-third of a fund "is a percent that has been approved as reasonable in this Circuit.")(citing cases); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of one-third and finding that it is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases).

6. **The Settling Parties Have Agreed to a Confidential Agreement Regarding Opt-Outs**

The Settling Parties have agreed to a standard supplemental agreement providing that if Settlement Class Members representing a certain number of shares of Aterian securities opt out of the Settlement, Aterian shall have the option to terminate the Settlement. Stipulation ¶10.6. As standard in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to extract an individual settlement. *See Christine Asia*, 2019 WL 5257534, at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").[12]

7. **There is No Preferential Treatment; The Plan Is Designed to Treat Class Members Equitably**

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *Citigroup*, 296 F.R.D. at 158. The Plan is fair, reasonable and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017); *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member

---

[12] *See also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *11–*12 (S.D.N.Y. June 29, 2010) (noting side letter agreement, preliminarily approving settlement).

of the Settlement Class").

The Plan, set out in the Long Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case and loss causation principles. Accordingly, the Plan does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the revelation of the truth. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Each claimant's Recognized Loss is calculated based on the number of shares purchased during the Class Period.  Under the Plan, Authorized Claimants will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

### 8.    The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with the factors set forth in Rule 23(e)(2), namely: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation. These factors support preliminary approval.

First, the fact that there has been no formal discovery in this case does not weigh against preliminary approval. *See American Bank Note Holographics,* 127 F. Supp. 2d at 425–426 ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation

marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.") Plaintiffs and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

Further, the Second Circuit directs the Court to consider whether Defendants could withstand a greater judgment. A defendant's ability to withstand a judgment greater than that secured by settlement, however, is generally not one of the determining factors. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"). In securities class actions, plaintiffs primarily look to the company defendant for settlement funds. It is highly unlikely that Aterian would be able to withstand a greater judgment here. In its Form 10-K filed on March 16, 2022, as of December 31, 2021, Aterian had cash and cash equivalents of $30.3 million and an accumulated deficit of $429.0 million, and the Company's accountants, Deloitte & Touche LLP, stated that there was "substantial doubt about [Aterian's] ability to continue as a going concern."[13] Moreover, the Company's insurer is not contributing to the Settlement Amount.  Thus, it is unlikely Defendants could withstand a greater judgment.

Finally, the reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762

---

[13]  *See*  https://www.sec.gov/ix?doc=/Archives/edgar/data/1757715/000156459022010668/ater-10k_20211231.htm

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).[14] As discussed above, in light of the risks of continued litigation, the Settlement, receiving over 36% of damages for Aterian investors, clearly falls within the range of reasonableness.

Accordingly, the Settlement is fair, reasonable, and adequate and should be preliminarily approved.

## V.    THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014)*. Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27.[15] The requirements of the PSLRA and due process are similar. *See* 15 U.S.C. § 78u-4(a)(7); *see also Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

---

[14] *See also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *Independent Energy*, 2003 WL 22244676, at *4 (noting few cases tried before a jury result in full amount of damages claimed).

[15] *See also Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'")

The proposed Notice program includes: (a) emailing links to the Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by SCS[16]; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice over *GlobeNewswire*. Courts routinely find these methods of notice sufficient.[17]

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged and how to request exclusion from the Settlement (and clearly states that all those who do not exclude themselves will be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Plaintiffs; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding notices to those persons for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[18] Furthermore, the PSLRA-mandated disclosures are satisfied as the Long Notice: (a) states the amount of the Settlement on both an aggregate and average per share basis; (b) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (c) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per

---

[16] Plaintiffs requests Strategic Claims Services ("SCS") be appointed the Claims Administrator as SCS has substantial experience administering securities settlements.

[17] *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.") (citing cases); *see also Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website).

[18] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

share basis) that counsel will seek; and (d) provides the contact information for Claims Administrator and Lead Counsel. 15 U.S.C. § 78u-4(a)(7).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of up to $40,000 and an award to Plaintiffs of up to $13,000, in total, all to be paid from the Settlement Fund. Accordingly, the Notice and the Notice program satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing:

| Event | Deadline for Compliance |
|---|---|
| Emailing Links and/or mailing Postcard Notice. | Within 16 Business Days after the entry of the Preliminary Approval Order (¶13). |
| Posting Stipulation, Long Notice, and Claim Form and Preliminary Approval Order on Claims Administrator's website | Within 16 days after entry of the Preliminary Approval Order (¶16). |
| Publication of the Summary Notice. | Within 10 days after the mailing of the Postcard Notice and emailing Links. (¶17). |
| Deadline to file papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 28 days prior to the Settlement Hearing. (¶27) |
| Deadline for requests for exclusion and objections | No later than 21 days prior to the Settlement Hearing. (¶¶21, 25) |
| Deadline for Claim Forms. | No later than 30 days prior to the Settlement Hearing. (¶19(a)) |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses. | No later than 7 days prior to the Settlement Hearing. (¶28) |
| Date for Settlement Hearing | 120 days after the Preliminary Approval Order. |

## VII.    CONCLUSION

For the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily certify the

Class for the purposes of Settlement; (2) preliminarily approve the Settlement as set forth in the

Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Hearing.

Dated:  May 4, 2022

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Email: jgoldberg@rosenlegal.com

Jing Chen
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 4, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Jacob A. Goldberg* _
Jacob A. Goldberg