**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH P. NOLFF, ANDREW TATE and BRUCE PALENSKE, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br><br>ATERIAN, INC., YANIV SARIG, FABRICE HAMAIDE, and ARTURO RODRIGUEZ,<br><br>    Defendants. | **CASE No.: 1:21-cv-04323-VM** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  ARGUMENT...................................................................................................................... 3

    A.  The Court Should Finally Certify the Settlement Class.................................................... 3

    B.  The Court Should Approve the Notice to the Settlement Class as Satisfying the
        Requirements of Rule 23 and Due Process...................................................................... 3

    C.  The Court Should Finally Approve the Settlement as Fair, Reasonable, and
        Adequate .......................................................................................................................... 5

        1.  As the Product of Arms' Length Negotiations, the Settlement is
            Presumptively fair ................................................................................................... 6

        2.  The Settlement is Fair, Reasonable, and Adequate under the Second Circuit's
            *Grinnell* Factors.................................................................................................... 7

            a)  The Case is Complex and Continued Litigation Will be Protracted
                and Costly.......................................................................................................... 8

            b)  The Settlement Class Reaction Supports Final Approval ................................. 11

            c)  Plaintiffs Were Sufficiently Informed to Settle the Action.............................. 12

            d)  Plaintiffs Faced Risks to Establishing Liability .............................................. 13

            e)  Risks of Maintaining Class Action Status Through Trial ................................ 16

            f)  The Ability of Defendants to Withstand a Greater Judgment........................... 16

            g)  The Settlement Amount is in the Range of Reasonableness in Light
                of the Best Possible Recovery and Attendant Risks......................................... 17

        3.  The Settlement Satisfied the Remaining Rule 23(e) Factors ................................ 19

            a)  Attorneys' Fees................................................................................................. 19

            b)  With the Exception of a Supplemental Agreement About a Termination
                Threshold, the Settling Parties Have No Other Agreement ............................. 20

    D.  The Court Should Approve the Plan of Allocation........................................................ 20

III. CONCLUSION................................................................................................................. 22

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ........................................................................ 4, 9

*Baker v. SeaWorld Ent., Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ............................ 5

*Cagan v. Anchor Sav. Bank FSB*,
No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................... 18

*Christine Asia Co. v. Yun Ma*,
No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)....................... 14, 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)................................................................. 8, 13, 17, 18

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................... 5, 8

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...................................................................... 6, 8

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992)...................................................................... 18

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............................. 11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 5, 14

*In re Agent Orange Prod. Liab. Litig.*,
611 F. Supp. 1396 (E.D.N.Y. 1985)................................................................ 18

*In re Alloy, Inc. Sec. Litig.*,
No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) .................................... 9

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................... 11, 12, 22

*In re AOL Time Warner, Inc.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................... passim

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 8, 12, 16, 17

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................................... 6

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................................... 8

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...................................... 21

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........................................................................... 6, 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................... 17

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................................... 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... passim

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................... 7

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................... passim

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) .......................................................................................... 21

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................ 6, 15, 21

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ...................................... 22

*In re PPDAI Grp. Inc. Sec. Litig.*,
    No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ..................................... 7

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................. 11, 14

*In re Sony Corp. SXRD*,
    448 F. App'x 85 (2d Cir. 2011) ............................................................................................... 8

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 CIV. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................. 13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................................ 15

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................ 6, 14

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................ 20

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................ 14, 15

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................................ 18

*Pelzer v. Vassalle*,
    655 F. App'x 352 (6th Cir. 2016) ...................................................................................... 19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................................ passim

*Yang v. Focus Media Holding Ltd.*,
    No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......................... 6

**Statutes**

15 U.S.C. §78u-4(b)(3)(B) ................................................................................................ 12

15 U.S.C. § 78u-4(a)(4) .................................................................................................... 19

**Rules**

Fed. R. Civ. P. 23(c)(2) .................................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................................. 4, 5

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................................ 4

Fed. R. Civ. P.  23 ...................................................................................................... 3, 4, 5

Fed. R. Civ. P.  23(e) ................................................................................................ 1, 5, 19

Fed. R. Civ. P.  23(e)(1) .................................................................................................... 4

v

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................................... 20

Fed. R. Civ. P. 23(a) and 23(b)(3) ............................................................................................... 3

Fed. R. Civ. P. 23(a) and (b)(3) of the Federal Rules of Civil Procedure ...................................... 3

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Joseph Nolff and Named Plaintiff Bruce Palenske ("Plaintiffs"),[1] on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their motion for certification of the Settlement Class, approval of notice to the Settlement Class in the form this Court preliminarily approved, final approval of the proposed Settlement, resolving all claims asserted in the Action, and approval of the proposed Plan of Allocation.

## I.    INTRODUCTION[2]

Having achieved preliminary approval of the Settlement, Plaintiffs now move for final approval of the Settlement, releasing claims against all defendants in exchange for a cash payment of one million three hundred thousand dollars ($1,300,000). The Settlement is fair, adequate, and reasonable, obtaining between 13.9% and 17.2% of the Settlement Class's maximum damages.

The Settlement is the product of arms' length negotiations after mediation with neutral Robert A. Meyer, Esq., of JAMS ("Mr. Meyer"), including the exchange of mediation statements in which both parties expounded on the strengths and weaknesses of their claims and defenses. These arms' length negotiations among experienced counsel with a neutral mediator lend a presumption of fairness to the Settlement.

In advance of these negotiations, however, Plaintiffs, through Lead Counsel, thoroughly investigated the claims the Action asserts and zealously represented the Settlement Class. While

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated April 22, 2022 (the "Settlement Stipulation"). *See* Dkt. No. 86.

[2] Plaintiffs incorporate herein by reference, in its entirety, the Declaration of Jacob A Goldberg ("Goldberg Declaration" or "Goldberg Decl."). The Goldberg Declaration details, among other things, the history of the Action, the nature of the claims asserted, the negotiations leading to the Settlement, the risks and uncertainties of continued litigation, and the terms of the Plan of Allocation of the Net Settlement Fund. All citations to "¶ __" and "Ex. __" in this Memorandum of Law refer to paragraphs in and Exhibits to the Goldberg Declaration.

Plaintiffs and Lead Counsel believe that their claims are meritorious, substantial challenges exist to establishing liability, proving damages, achieving a greater recovery, and collecting it. Defendants have and continue vigorously to deny liability, contesting each element of Plaintiffs' claims, including asserting defenses that may materially reduce potential damages. No guarantee exists that Plaintiffs would have been able to obtain the necessary evidence to prove their case. Even if they could, discovery, class certification, summary judgment, trial and appeal would be costly, take years, and delay any potential recovery to the Settlement Class.

Even if Plaintiffs could have succeeded at trial, currently available financial information suggests that material doubt exists that Aterian could withstand a greater judgment. According to its Form 10-Q filed on August 8, 2022, as of June 30, 2022, the Company had total cash and cash equivalents of $34.8 million and an accumulated deficit of $488.0 million. In addition, the Company's net loss and net cash used in operating activities amounted to $59.1 million and $22.1 million, respectively, for the six months ended June 30, 2022. The Company disclosed that there was "substantial doubt about [Aterian's] ability to continue as a going concern." ¶ 49. Both the costs and risks of continued litigation and the uncertainty of collectability coupled with the $1.3 million cash payment falling within the range of settlements in comparable securities fraud class actions support final approval of the Settlement. Importantly, the reaction of the Settlement Class is positive, further supporting approval. As of the date of this filing, no member of the Settlement Class has objected to the certification of the Settlement Class, final approval of the Settlement, the Plan of Allocation, and/or the adequacy of the notice. Plaintiffs are aware of only one, invalid request for exclusion. Ex. 1 ¶ 14. One Settlement Class member has requested exclusion and such exclusion request is invalid for failing to provide the required information and

2

follow the required procedure. *Id*. ¶ 13.[3]

For the following reasons, therefore, this Court should certify the Settlement Class, approve the notice as the best practicable means of informing the Settlement Class, approve the Settlement as fair, adequate, and reasonable, and approve the Plan of Allocation.

## II.   ARGUMENT

### A.   The Court Should Finally Certify the Settlement Class

In its "Preliminary Approval Order," (Dkt. No. 87), the Court found, "preliminarily and for purposes of the Settlement of the Action only, that the Settlement Class satisfies the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure." (Dkt. No. 87 ¶ 3) (finding that the Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3)). Plaintiffs incorporate herein by reference, in their entirety, the arguments they made in their Preliminary Approval Brief (Dkt. No. 84). Nothing has changed with respect to these elements since the Court entered the Preliminary Approval Order, and no Settlement Class Member has objected to the certification of the Settlement Class for purposes of effectuating the Settlement. Ex. 1 ¶ 14. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief  and in this Court's Preliminary Approval Order, Plaintiffs respectfully request that the Court certify the Settlement Class under Rules 23(a) and (b)(3).

### B.   The Court Should Approve the Notice to the Settlement Class as Satisfying the Requirements of Rule 23 and Due Process

The notice program, alerting the Settlement Class to the Action's existence, their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice,

---

[3] Exhibit 1 to the Goldberg Declaration is the Declaration of Josephine Bravata Concerning: (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Bravata Decl.").

complies with this Court's Preliminary Approval Order and satisfies Rule 23(e)(1)'s mandate and due process.

Courts evaluate compliance with Rule 23 and due process, measuring the notice program's reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Pierson*, 607 F. App'x at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(2)(C)(ii).In its Preliminary Approval Order, the Court approved the notice program and its substance. (Dkt. No. 87 ¶ 8; Dkt. No. 88). In addition, the Court appointed Strategic Claims Services ("SCS") as Claims Administrator. (Dkt. No. 87 ¶ 10.) Under Lead Counsel's direction, SCS executed the notice program precisely and timely as the Court ordered. SCS first notified the Depository Trust Company ("DTC") which published the Long Notice and Proof of Claim to its Legal Notice System ("LENS"). Ex. 1¶ 3.[4] SCS maintains a master list of over 1,900 nominees who hold in "street name" their clients' securities. SCS mailed letters to 1,926 nominees, alerting them to the Settlement, requesting names of beneficial owners of Aterian securities. *Id*. ¶ 4. Defendants' counsel, nominees and others provided names and contact information for potential Settlement Class Members. *Id*. ¶ 6. Thus far, SCS, itself, mailed 20,788 Postcard Notices and one nominee emailed notice to the 13,788 clients it represented who are potential Settlement Class Members. *Id*. ¶¶ 6, 7. Thus, a total of 34,576 potential Settlement Class Members received notice of the

---

[4] According to the Bravata Decl., DTC's "LENS provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted." Ex. 1 ¶ 3.

Settlement. *Id*. ¶ 8. The settlement-specific webpage SCS created provides the Settlement Class with information concerning the Settlement, all applicable deadlines, and copies of key documents, including the Stipulation of Settlement, the Preliminary Approval Order, the Long Notice, containing the Plan of Allocation ("Plan"), and the Proof of Claim. *Id.* ¶ 12. On June 6, 2022, SCS also caused *GlobeNewswire* to publish electronically the Summary Notice of Pendency and Proposed Securities Class Action Settlement ("Summary Notice"). *Id.* ¶ 10.

The claims process is also effective and includes a standard Proof of Claim form, prompting Settlement Class Members to submit information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. Under Rule 23(c)(2)(B), together, the mailing of Postcard Notices and emailing of the link to the Long Notice and Proof of Claim on the Aterian-specific settlement webpage to Settlement Class Members whom SCS identified with reasonable effort, the publication of the Summary Notice, and the creation of a settlement-dedicated web page comprise "the best notice ... practicable under the circumstances." *see, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) ("The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."); *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar notice program including website); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014). This Court should, therefore, approve the execution of the notice program pursuant to its Preliminary Approval Order as satisfying Rule 23 and due process.

## C.     The Court Should Finally Approve the Settlement as Fair, Reasonable, and Adequate

Under Rule 23(e), courts approve class action settlements that are "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d

96, 116 (2d Cir. 2005). "Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) (internal quotation omitted). Accordingly, public policy favors settlement, particularly in class actions. *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context'"). Further, "[i]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (alterations in original); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *5 (S.D.N.Y. Dec. 23, 2009) (same).

### 1.     As the Product of Arms' Length Negotiations, the Settlement is Presumptively fair

As an initial matter, this Court may presume that the Settlement is fair, adequate, and reasonable as the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's recommendations regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (Settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he

participation of this highly qualified [JAMS mediator] strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *9 (E.D.N.Y. Jan. 21, 2022) (approving settlement where the settling parties engaged Mr. Meyer as a mediator). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotation omitted).

Here, after Lead Counsel thoroughly investigated the Plaintiffs' claims, filed the operative Complaint [5], and exchanged with Defendants pre-motion to dismiss letters, summarizing arguments on the Complaint's sufficiency, settlement negotiations commenced. ¶ 31. With Mr. Meyer as the mediator, the Settling Parties exchanged detailed and candid briefs concerning each element of Plaintiffs' claims and defenses thereto. *Id*. On March 9, 2022, the Settling Parties participated in a mediation session with Mr. Meyer, failing to settle after over 11 hours of negotiations. The Settling Parties continued negotiating for days with Mr. Meyer's assistance, reaching a settlement, in principle, on March 16, 2022. ¶ 27.

The arm's-length nature of the settlement negotiations between experienced counsel, with the involvement of Mr. Meyer should cause this Court to presume, at the outset, that the Settlement is fair, adequate, and reasonable.

### 2. The Settlement is Fair, Reasonable, and Adequate under the Second Circuit's *Grinnell* Factors

With the presumption, here, of fairness, this Court will evaluate the Settlement, "examin[ing] the fairness, adequacy, and reasonableness of a class settlement according to the

---

[5] The operative Complaint is the Third Amended Class Action Complaint for Violation of The Federal Securities Laws, filed on January 5, 2022. ("Complaint", Dkt. No. 75.)

*Grinnell* factors," including:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Deutsche Bank*, 236 F.3d at 86.

While courts consider each of the *Grinnell* factors, "not every factor must weigh in favor of settlement[. R]ather court[s] should consider the totality of these factors in light of the particular circumstances." *IMAX*, 283 F.R.D. at 189. "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). As demonstrated below, the Settlement satisfies the criteria for approval under *Grinnell*.

**a)**      **The Case is Complex and Continued Litigation Will be Protracted and Costly**

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aeropostale*, 2014 WL 1883494, at *5 (quoting *In re Bear Stearns*

8

*Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Action is no exception.

Further litigation would have required substantial additional expenditures of time and resources, involving complex issues of law and fact, with a significant risk of a lower recovery, if any. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages").

For example, in the absence of the Settlement, the Action would have required resolution of Defendants' motion to dismiss, and if Plaintiffs had prevailed, then fact and expert discovery, a motion for class certification, summary judgment motions, trial, post-trial motions, and appeals. Throughout each litigation phase, Plaintiffs would continue to face a robust defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"). As a result of such "notorious complexity, securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner, Inc.*, 2006 WL 903236, at *8.

Complex issues related to scienter, loss causation, and damages, among others, are prevalent here. When the Settlement was reached, the Defendants had not filed their motions to dismiss. Adjudication of the motions of dismiss could have resulted in a complete dismissal. *See* Ex. 7 (NERA Report) at 14 ("Of the securities class action cases filed and resolved between 1 January 2012 and 31 December 2021, a motion to dismiss was filed in 96%. Among those, a decision was reached in 73% of cases. Of the cases with a decision on a motion to dismiss,

approximately 56% were granted while only 19% were denied.").

Even if Plaintiffs could prevail on the motions to dismiss, Plaintiffs would still face many highly technical hurdles. The Complaint primarily alleges that Aterian, a consumer product vendor on online platforms, misrepresented to the investing public that Aterian's proprietary artificial intelligence ("AI") platform, AIMEE, enabled Aterian rapidly and successfully to identify and monetize product opportunities and to initiate and manage marketing, sales, and fulfillment. ¶ 24. The Complaint alleges AIMEE in fact was not AI, but rather an Excel spreadsheet that Aterian employees manually launched and operated. *Id*. To establish such misrepresentations and associated scienter, in discovery, Plaintiffs must hire a qualified expert or experts in the artificial intelligence industry to thoroughly analyze the AIMEE platform and related documents and communications and opine on the issue of whether AIMEE possessed any AI capabilities during the Class Period. ¶ 34. This is a highly technical, complicated, expensive and time-consuming task. Additionally, to establish damages here, Plaintiffs would have to retain an expert to disaggregate damages resulting from the information contained in the Culper Report unrelated to the AIMEE misrepresentation and related acquisitions and from non-fraud related market forces that may have caused Aterian securities' price to drop. ¶ 35. Moreover, to certify a class under Section 10(b), Plaintiffs would have to establish that the market for Aterian securities was efficient. These also are highly technical and complicated tasks. *Id*.

Moreover, Plaintiffs still had to achieve class certification, withstand summary judgment and pre-trial motions, prepare for and obtain a verdict in a lengthy jury trial on liability, litigate post-trial motions and bifurcated trials on damages, and withstand lengthy appeals. ¶¶ 36-40; *see In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.");

10

see also *AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"). These hurdles are no small task and would take "substantial time and expense." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *5 (S.D.N.Y. July 21, 2020).

Even if Plaintiffs could recover a larger judgment after a trial *and* recover from Defendants – no certainty – the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. ¶ 39; *see Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Whether Aterian can "continue as a going concern" casts doubt on collectability in the face of the duration and expense required to succeed through verdict and appeal. ¶ 49. Accordingly, material risk exists that further litigation might yield a smaller recovery – or no recovery at all – years in the future. *See*, *e.g.*, *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class). Analysis of the expense, duration, and complexity supports final approval of the Settlement.

### b) The Settlement Class Reaction Supports Final Approval

The reaction of the class to a proposed settlement is a significant factor to weigh in

considering its fairness and adequacy. *See Bear Stearns*, 909 F. Supp. 2d at 266-67; *see Wal-Mart*, 396 F.3d at 118 (small number of objections indicates settlement's adequacy). The absence of any objections and/or valid requests for exclusion supports that the Settlement Class approves of the Settlement. *Am. Bank Note*, 127 F. Supp. 2d at 425 (lack of objections supports settlement's fairness).

Pursuant to the Preliminary Approval Order, SCS has transmitted to potential Settlement Class Members over 20,000 Postcard Notices, contacting another over 13,000 potential Settlement Class Members through one nominee. Ex. 1 ¶¶ 6-8. SCS cause *GlobeNewswire* to publish the Summary Notice electronically. *Id.* ¶ 10. While the deadline for Settlement Class Members to object to the Settlement or request for exclusion is August 19, 2022, to date, no Settlement Class Member has objected. *Id.* ¶ 14. One potential Settlement Class Member requested exclusion, but failed to adhere to this Court's instructions, rendering that request invalid. *Id.* ¶ 13. Plaintiffs will address objections, if any, and additional requests for exclusion in their Reply in further support of final approval.

The Settlement Class's favorable reaction supports final approval of the Settlement.

c)      <strong>Plaintiffs Were Sufficiently Informed to Settle the Action</strong>

Courts also evaluate whether Plaintiffs and Lead Counsel are sufficiently informed about the merits of the claims and defenses and the value thereof. *Bear Stearns*, 909 F. Supp. 2d at 267. Considering the stage of the proceedings," *Wal-Mart*, 396 F.3d at 117, discovery need not be extensive so long as the Court is satisfied that Plaintiffs "'have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement'." *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 (The "sufficiently informed" factor is "not an overly burdensome one to achieve.").

Because of the PSLRA discover stay, 15 U.S.C. §78u-4(b)(3)(B), at the time of the

12

Settlement, Plaintiffs had received no discovery. ¶ 35. Through Lead Counsel, however, Plaintiffs understood the strengths and weaknesses of the claims and defenses asserted, enabling them to appraise their chance of success. Lead Counsel had thoroughly investigated their claims, including analyzing public filings, news articles, analyst reports, and other publicly available information relevant to the claims at issue, and hiring private investigators to locate and interview relevant witnesses. ¶ 31. Lead Counsel also researched law applicable to Plaintiffs' claims and potential defenses thereto and in response to Defendants' pre-motions to dismiss letters. *Id*. Additionally, Lead Counsel analyzed potential class-wide damages. *Id.* In addition, Plaintiffs became better informed during the March 9, 2022, mediation with Mr. Meyer and continued settlement negotiations following the mediation. *Id.*

In light of these efforts, Plaintiffs and Lead Counsel sufficiently understood the claims and defenses, including the significant risks to establishing liability, damages, and collectability of a judgment. ¶ 32; *see AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) (formal discovery unnecessary so long as settlement proponents have sufficient understanding of claims and defenses). Plaintiffs' investigations of the class claims and their understanding of the defenses suffice to support final approval of the Settlement.

### d) Plaintiffs Faced Risks to Establishing Liability

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to

members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11.   *See also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019).  At the time that the Settling Parties agreed to the Settlement, Defendants had transmitted their pre-motion to dismiss letters to Plaintiffs, summarizing pleading deficiencies that warranted dismissal. ¶¶ 20,31,43. Defendants asserted that their misstatements were not materially misleading, that the alleged misrepresentations were forward looking statements protected by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and statements of opinions and puffery, that Defendants did not act with the requisite scienter, and that the complaint failed to allege loss causation. ¶ 43. Without a settlement, Plaintiffs faced the material risk that Defendants would prevail on their motions to dismiss.  The Settlement avoids the risk of dismissal. Even if the Plaintiffs had defeated Defendants' motion to dismiss, Plaintiffs would face significant obstacles obtaining the necessary evidence to prove their case at summary judgment and trial.  ¶ 44.

Risks like these support settlement, because "it is difficult to predict" how courts and fact-finders will decide difficult issues like scienter and damages in complex securities class actions. *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *9 (S.D.N.Y. 2007). Even on the best facts, loss causation and damages issues are often an unpredictable and expensive "battle of the experts." *Signet*, 2020 WL 4196468 at *11. Given the complexities and risks inherent in continued litigation, the proposed cash Settlement of $1.3 million warrants approval. *Advanced*

14

*Battery*, 298 F.R.D. at 176 ("[T]he present value of a certain recovery at this time, compared to the slim chance for a greater one down the road, supports approval.").

Had the litigation proceeded, Defendants would present loss causation and damages defenses, which may have found favor with the Court at summary judgment or the jury at trial. Defendants have argued and would continue to argue that, based on the fact that only 1 out of the 20 pages of the Culper Report covered the AIMEE software, a key issue relating to the alleged fraud in the Action, damages here, if any, are mere fractions of what Plaintiffs claim. ¶ 46.

As in other complex securities cases, the parties here would rely on expert testimony to assist the jury in determining damages. *Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury."). While Plaintiffs would argue that they are entitled to maximum damages resulting from every stock drop as alleged in the Complaint, Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579–80 (S.D.N.Y. 2008).

Therefore, even if liability was established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global*, 186 F. Supp. 2d at 365. If a jury accepted Defendants' arguments, damages in this case could be greatly reduced, if not entirely eliminated. *Marsh & McLennan*, 2009 WL 5178546, at *6 ("[i]f there is

15

anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, the material risks of Plaintiffs and the Settlement Class receiving nothing favors final approval.

> **e)      Risks of Maintaining Class Action Status Through Trial**

During the course of the Action, Plaintiffs had not yet moved for class certification, waiting for resolution of the motion to dismiss. ¶¶ 42,48. Generally, however, material risk of non-certification or decertification exist in securities class actions. Defendants would likely challenge class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. Indeed, Plaintiffs would need to retain an expert to opine that Aterian securities traded on an efficient market and that there was a common methodology to calculate class-wide damages. Defendants typically challenge market efficiency, price impact, and the adequacy of Plaintiffs to serve the class. Even if this Court certified a class over Defendants objections, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage").

Accordingly, the uncertainty of achieving class certification supports approval of the Settlement.

> **f)      The Ability of Defendants to Withstand a Greater Judgment**

Material doubt exists that Defendants can withstand a greater judgment. ¶ 49. Courts have recognized that "[t]his factor typically weighs in favor of settlement where a greater judgment would put defendant at risk of bankruptcy or other severe economic hardship." *AOL Time Warner*, 2006 WL 903236, at *12. The prospect here is material.

As of June 30, 2022, Aterian had total cash and cash equivalents of $34.8 million and an accumulated deficit of $488.0 million. ¶ 49. In addition, the Company's net loss and net cash used

in operating activities amounted to $59.1 million and $22.1 million, respectively, for the six months ended June 30, 2022. *Id*. Aterian disclosed in the August 8, 2022 Form 10-Q that "uncertainties raise substantial doubt about [Aterian's] ability to continue as a going concern." *Id*. Material risk exists that Aterian, the sole source of funding the Settlement, would be unable to withstand a greater judgment. *Id*. Without the Settlement, a material risk exists that Plaintiffs would recover nothing. This risk supports final approval.

g)    **The Settlement Amount is in the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks**

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario – assuming Plaintiffs overcome all the obstacles noted above and win at trial, and Defendants do not prevail on any of their arguments – Plaintiffs' *maximum* damages potentially recoverable are $9.36 million. ¶ 29. Should any of Defendants' arguments on liability or damages succeed, however, recoverable damages may be materially less. *See Facebook*, 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing

17

liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.")  The $1.3 million Settlement represents 13.9% to17.2% of the Settlement Class's best-case, maximum recoverable damages. *Id.* In light of the substantial risk that Plaintiffs might recover nothing without the Settlement, this Settlement is within the range of reasonable.  *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval which amounted to approximately 1.9% of best possible recovery).

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain – and particularly here, enforce – a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Courts recognize that "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Money in Settlement Class Members' pockets now is more valuable than a speculative recovery that Settlement Class Members might obtain after years of litigation, especially when that theoretical recovery comes with the substantial risk that the Settlement Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. Indeed, Plaintiffs agreed to the Settlement with a full and candid understanding of the strengths and weaknesses of the case. ¶¶ 31,32.

18

For the foregoing reasons, Plaintiffs submit that the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Settlement Class's best interests. Analysis of the *Grinnell* factors should cause this Court, therefore, to order final approval.

### 3.    The Settlement Satisfied the Remaining Rule 23(e) Factors

#### a)    Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in the Memorandum of Law in support of the motion for an award of attorneys' fees, expenses, and award to Plaintiffs, filed concurrently herewith, Lead Counsel seek an award of attorneys' fees of one-third of the Settlement and payment for litigation charges and expenses. (Dkt. No. 88, at 1,2); Ex 1, Ex A, at 1. The notice program this Court approved and that Lead Counsel, through SCS, executed fully discloses these fees and costs. Ex 1, Ex A, at 1.

In addition, Lead Counsel requests that any award of fees and expenses be paid at the time the Court makes its award. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 846 (E.D. Va. 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order."). Indeed, such "provisions are common." *Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016).

Plaintiffs also request $13,000 in total (comprised of $10,000 to Lead Plaintiff Joseph Nolff and $3,000 to Named Plaintiff Bruce Palenske) pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their efforts in stewarding the Action. (Dkt. No. 88, at 1,2); Ex 1, Ex A, at 1. The fees and costs Plaintiffs seek are in line with other fee and costs awards in this Circuit. Because the notice informed the Settlement Class and no Settlement Class Member has objected to final approval or to the fees and costs Plaintiffs notified the Settlement Class they would seek, the Settlement satisfies Rule 23(e)(2)(C)(iii). Ex 1 ¶ 14.

19

**b)** **With the Exception of a Supplemental Agreement About a Termination Threshold, the Settling Parties Have No Other Agreement**

Pursuant to Rule 23(e)(2)(C)(iv), as disclosed in the Settlement Stipulation (Dkt. No. 86 ¶ 10.6), and in Plaintiffs' Preliminary Approval brief (Dkt. No. 84, at 20), the Settling Parties have entered into a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Aterian securities represented by such opt outs equals or exceeds a certain amount, Defendants have the option to terminate the Settlement. (Dkt. No. 86 ¶ 10.6.) As is standard practice in securities class actions, while the supplemental agreement is identified in the Settlement Stipulation, the terms were confidential to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement. This agreement has no bearing on the fairness of the Settlement, and as such, this factor weighs in favor of final approval. *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

**D.** **The Court Should Approve the Plan of Allocation**

In addition to seeking approval of the Settlement, Plaintiffs request that the Court approve the proposed Plan of Allocation of Settlement proceeds. (Dkt. No. 88, at 6-8); Ex. 1, Ex. A, at 5-8. The standard for approval of the Plan of Allocation is the same as the standard for approving the Settlement as a whole: namely, "it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (internal quotation omitted). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see*

20

*also Marsh & McLennan*, 2009 WL 5178546, at \*13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation ("Plan") is set forth in the Long Notice. (Dkt. No. 88, at 6-8); Ex. 1, Ex. A at 5-8. Lead Counsel developed the Plan with the assistance of a damages expert to equitably distribute the Net Settlement Fund. ¶ 31. Each eligible Settlement Class Member who or which submits a valid Proof of Claim form, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan. Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution. (Dkt. No. 88, at 6-8); Ex. 1, Ex. A, at 5-8. Under the Plan, a "Recognized Loss" will be calculated for each purchase of Aterian securities during the Settlement Class Period for which adequate documentation is provided. The calculation of Recognized Loss is explained in detail in the Notice and incorporates several factors, including when and for what price the Aterian securities were purchased and sold, and the estimated artificial inflation in the Aterian securities' respective prices at the time of purchase and sale. The Plan also takes into account the relative strengths of the theories alleged in the Complaint. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at \*5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (approving plan of allocation as fair and reasonable where it treated class members equally and on a *pro rata* basis and comported with the plaintiffs' theory of damages). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss. (Dkt. No. 88, at 6); Ex. 1, Ex. A at 6.

Lead Counsel believe that the proposed Plan provides a fair and reasonable method to allocate the Net Settlement Fund equitably among Settlement Class Members who suffered losses

as result Defendants' alleged misconduct. Their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430. As of the date of this filing, no objections to the Plan have been received, suggesting that the Settlement Class also finds the Plan to be fair and reasonable. ¶24; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan).

For each of the forgoing reasons, Plaintiffs respectfully submit that the proposed Plan is fair and reasonable, and merits final approval from the Court.

## III.    CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request that the Court finally certify the Settlement Class, approve the notice program as Plaintiffs executed it, grant final approval of the Settlement as fair, reasonable, and adequate, and approve the Plan of Allocation.[6]

Dated: August 12, 2022                    Respectfully submitted,

                                         **THE ROSEN LAW FIRM, P.A.**

                                         By: */s/ Jacob A. Goldberg*

---

[6] Plaintiff's [Proposed] Final Judgment Approving Class Action Settlement was previously filed as Ex. B to the Settlement Stipulation. (*See* Dkt. No. 86-6.)

Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Email: jgoldberg@rosenlegal.com

Jing Chen
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg