**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH P. NOLFF, ANDREW TATE and BRUCE PALENSKE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATERIAN, INC., YANIV SARIG, FABRICE HAMAIDE, and ARTURO RODRIGUEZ,<br><br>Defendants. | **CASE No.: 1:21-cv-04323-VM** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES,**
<u>**REIMBURSEMENT OFEXPENSES, AND AWARD TO PLAINTIFFS**</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL HISTORY ................................................... 2

III.    ARGUMENT ...................................................................................................... 3

        A.    The Common Fund Doctrine Applies, Entitling Lead Counsel to Fees and
              Reimbursement of Expenses from the Settlement Fund ........................................ 3

        B.    The Court Should Award Lead Counsel a Reasonable Percentage of the
              Settlement Fund .................................................................................................. 4

        C.    Plaintiffs' Request of One-Third of the Settlement Fund is Reasonable ............... 5

              1.    The Attorneys' Fees Plaintiffs Request Are Reasonable Under the
                    Percentage of the Fund Method ................................................................. 5

              2.    A Lodestar Cross-Check Supports the Reasonableness of the Attorneys'
                    Fees Plaintiffs' Request .............................................................................. 7

        D.    Factors Courts in the Second Circuit Consider Support the Reasonableness
              of the Attorneys' Fees Plaintiffs Request ................................................................ 9

              1.    The Time and Effort Expended Support the Requested Fee ...................... 9

              2.    The Risk of Failure in Succeeding in the Action or Achieving a
                    Greater Recovery Support the Attorneys' Fees Plaintiffs Request ........... 11

                    a)    The Contingent nature of Lead Counsel's Representation
                          Supports the Attorneys' Fees Plaintiffs Request .......................... 11

                    b)    The Material Risks of Failing to Establish Liability or
                          Damages Support the Attorneys' Fees Plaintiffs Request ............ 13

              3.    The Complexity of the Action Supports the Requested Fee ................... 14

              4.    The Quality of Lead Counsel's Representation of Plaintiffs and
                    the Putative Class Supports the Attorneys' Fees Plaintiffs Request ....... 15

              5.    The Attorneys' Fees Plaintiffs Request in Relation to the Settlement .... 16

              6.    Public Policy Considerations Support the Attorneys' Fees
                    Plaintiffs Request ................................................................................. 17

              7.    The Reaction of the Settlement Class Supports the Attorneys'
                    Fees Plaintiffs Request .......................................................................... 18

E.    This Court Should Approve Reimbursement of Lead Counsel's
      Expenses as Reasonable and Necessary to the Benefit Obtained.......................... 18

F.    The Court Should Approve Compensatory Awards to Plaintiffs ......................... 19

IV.    CONCLUSION.................................................................................................................. 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
 No. 96 Civ. 0583, 2002 WL 1315603 (S.D.N.Y. June 17, 2002)............................................... 8

*Becher v. Long Island Lighting Co.*,
 64 F. Supp. 2d 174 (E.D.N.Y. 1999) ....................................................................................... 6

*Blum v. Stenson*,
 465 U.S. 886 (1984)............................................................................................................... 4

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)............................................................................................................... 3

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)................................................................................................... 11

*City of Providence v. Aeropostale, Inc.*,
 No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)............... 6, 8, 15, 17

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
 925 F.3d 63 (2d Cir.)............................................................................................................ 3, 4

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)............................................................................................... passim

*Hicks v. Stanley*,
 No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................... 17

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
 No. 03 CIV.5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................................... 16

*In re AOL Time Warner, Inc.*,
 No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................. 12, 14

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
 772 F.3d 125 (2d Cir. 2014).................................................................................................. 20

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
 909 F.Supp.2d 259 (S.D .N.Y.2012)........................................................................................ 8

*In re Blech Sec. Litig.*, 94 CIV. 7696 (RWS),
 2000 WL 661680 (S.D.N.Y. May 19, 2000) ........................................................................... 8

*In re China Sunergy Sec. Litig.*,
No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................... 18

*In re Comverse Tech., Inc. Sec. Litig.*,
*No.* 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................... 11, 16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................... 5, 15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 ...................................................................................................... 6, 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................... passim

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..................... 18, 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 7, 11, 15, 19

*In re KeySpan Corp. Sec. Litig.*,
No. 01 CV 5852(ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ................................. 18

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................. 20

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................................... 13

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................. 19, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................................. 4, 6

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................................................... 5

*In re Sterling & Foster, Inc. Sec. Litig.*,
238 F. Supp. 2d 480 (E.D.N.Y. 2002) ................................................................................. 8, 19

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................................... 7

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................ 15, 16, 20

iv

*Johnson v. Brennan*,
No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)...................................... 5

*Khait v. Whirlpool Corp.*,
No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .......................................... 6

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................. 3, 17

*McDaniel v. Cty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)...................................................................................................... 4

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)................................................................................................................... 3

*Missouri v. Jenkins by Agyei*,
491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).......................................................... 7

*Savoie v. Merchs. Banks*,
166 F.3d 456 (2d Cir. 1999)..................................................................................................... 6

*Spann v. AOL Time Warner*,
No. 02 Civ. 8238DLC, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)......................................... 8

*State of W. Va. v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................................. 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................................ 4, 5, 6

**Statutes**

15 U.S.C. §78u-4(a)(4) ........................................................................................................ 2, 19

15 U.S.C. § 78u-4(a)(6) .............................................................................................................. 5

**Rules**

Fed. R. Civ. P. 23..................................................................................................................... 1

Fed. R. Civ. P. 54(d) ................................................................................................................ 1

Pursuant to Rules 23 and 54(d) of the Federal Rules of Civil Procedure, Lead Plaintiff Joseph Nolff and Named Plaintiff Bruce Palenske ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for (i) an award of attorneys' fees in the amount of one-third (33⅓%) of the Settlement Amount ($433,333.33); (ii) reimbursement of necessary and reasonable litigation expenses of $23,892.16; and (iii) compensatory awards of $13,000 in aggregate (comprised of $10,000 to Lead Plaintiff Joseph Nolff and $3,000 to Named Plaintiff Bruce Palenske) pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    INTRODUCTION

The proposed Settlement, providing for a cash payment of $1,300,000 in exchange for resolution of Plaintiffs' claims, represents a timely, fair, adequate, and reasonable outcome for the Settlement Class given the risks and expenses of continued litigation, including the risk of a smaller recovery years from now, or no recovery at all. Shortly after final approval, Settlement Class members will receive a cash payment, avoiding further delay, uncertainty, and risk.

Since the inception of the Action in 2021, Lead Counsel has not received any compensation even as it zealously represented Plaintiffs and the Settlement Class. Plaintiffs, therefore, request that the Court award from the common fund attorneys' fees equal to one-third (33⅓%) of the Settlement Amount, or $433,333.33, for obtaining this favorable result for the Settlement Class. In zealously representing Plaintiffs and the Settlement Class, Lead Counsel confronted the material risk of non-payment of attorneys' fees and expenses they advanced. Not only did Plaintiffs face challenges to establishing liability and damages, but a material risk existed in this case that even if Lead Counsel succeeded in securing a judgment on behalf of the Settlement Class that sources

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated April 22, 2022. *See* ECF No. 86.

of payment would have evaporated – leaving the Settlement Class and Lead Counsel with nothing. Despite these risks, Lead Counsel zealously litigated this Action on a contingency basis.

An award of one-third of the Settlement Amount in attorneys' fees properly reflects the risks Lead Counsel assumed and the favorable result it achieved on behalf of Plaintiffs and the Settlement Class. An evaluation of the Second Circuit's *Goldberger* factors supports the attorneys' fee award Plaintiffs request. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). While this Court should award a percentage of the common fund to Lead Counsel, under either that method or the lodestar method for awarding attorneys' fees, the requested fee is reasonable and within the range of attorneys' fees awarded in similar cases. In fact, Lead Counsel's lodestar yields a multiplier of 0.87, meaning the value of Lead Counsel services exceeds the attorneys' fee award Plaintiffs seek. Courts in this Circuit have repeatedly recognized the reasonableness of the fee request where, as here, the percentage of the common fund a plaintiff requests as attorneys' fees is less than counsel's total. Moreover, to date, no Settlement Class Member has objected to the fee request.

On Lead Counsel's behalf, Plaintiffs also seek reimbursement of $23,892.16 of out-of-pocket litigation expenses incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiffs' claims successfully.

Finally, during the course of the Action, Plaintiffs have expended hours of effort, leading the Action on behalf of the Settlement Class. Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), therefore, to compensate them for their time, Plaintiffs request reimbursement of $13,000 ($10,000 for Lead Plaintiff Joseph Nolff and $3,000 for Named Plaintiff Bruce Palenske). This request is reasonable and in line with awards granted in similar cases.

## II.    FACTUAL AND PROCEDURAL HISTORY

In support of this Motion, Plaintiffs submit the Declaration of Jacob A. Goldberg

("Goldberg Declaration" or "Goldberg Decl.") incorporating it herein, in its entirety. Plaintiffs refer to the Goldberg Declaration for a description of the history of the Action, the nature of the claims asserted, the litigation and negotiations leading to Settlement, the risks and uncertainties of continued litigation, and a description of the services Lead Counsel provided for the benefit of the Settlement Class.[2]

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies, Entitling Lead Counsel to Fees and Reimbursement of Expenses from the Settlement Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47 (Attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund"); *see also Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir.), *cert. denied,* 140 S. Ct. 385 (2019). This achieves equity, preventing "unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. More, awarding attorneys' fees from a common fund counsel's efforts create "encourage[s] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*.

The touchstone of the common fund doctrine's application is whether counsel's efforts confer a substantial benefit on the class. *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)) (Counsel's "efforts must confer a 'substantial benefit on the members of an ascertainable class.").

---

[2] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to, the Goldberg Decl.

3

Here, Lead Counsel's efforts have conferred a substantial benefit – $1,300,000 in cash – on the Settlement Class, warranting payment of attorneys' fees from the common fund. Accordingly, the Court should award attorneys' fees from the common fund.

**B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Settlement Fund**

The preferred method for awarding fees from a common fund is the percentage of the fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit, however, leaves to lower courts whether to award attorneys' fees "under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). "The trend in this Circuit," however, "is toward the percentage method." *Wal-Mart*, 396 F.3d at 121.

This Court should apply the percentage of the fund method. It is appropriate in this case, and the preference of district courts, because it "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work. . . ." *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014).[3] The Court should not apply the lodestar method because it "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Wal-*

---

[3] The Second Circuit recently affirmed these principles, rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cty.*, 925 F.3d at 63. In *Fresno*, the Second Circuit confirmed the propriety of the percentage approach for awarding attorneys' fees in PSLRA cases. *Id.* at 72.

*Mart*, 396 F.3d at 121.

The percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method.").

This Court may, however, evaluate the reasonableness of the percentage of the fund it awards as attorneys' fees by reference to Lead Counsel's lodestar. That is, counsel's lodestar provides a "cross-check" on the reasonableness of the percentage. *Wal-Mart*, 396 F.3d at 123. For this cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 ("[T]he reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."). As a cross-check, this Court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *14–15 (S.D.N.Y. Sept. 16, 2011) (as a cross-check, courts need not scrutinize fee records).

When considered under either method, this Court should award the attorneys' fees Plaintiffs request as reasonable.

### C.    Plaintiffs' Request of One-Third of the Settlement Fund is Reasonable

#### 1.    The Attorneys' Fees Plaintiffs Request Are Reasonable Under the Percentage of the Fund Method

Lead counsel's zealous prosecution of Plaintiffs' claims enabled them to understand the risks of proving liability, proving damages, and – importantly here – understanding the possible

collectability problem. ¶¶ 31,49. Under those circumstances, relatively prompt resolution of this Action –which the percentage of the fund promotes – provides the best chance of material recovery for the Settlement Class. Consistent with the goals of the percentage of the fund method at the outset of class action litigation, Lead Counsel did not dally, avoiding protracted litigation just to increase their lodestar. Rather, Lead Counsel developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims prior to Plaintiffs' settling the Action on behalf of the Settlement Class. ¶ 31. This Court should, therefore, apply the percentage of the fund method to award fees in this case. *See Wal-Mart,* 396 F.3d at 121 (percentage method incentivizes "efficient prosecution and early resolution of litigation'"); *see also Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

More, a fee of one-third of the common fund for Lead Counsel's efforts is fair, reasonable, and consistent with the range of percentages courts in the Second Circuit have awarded in similar common fund cases. *See, e.g.*, *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *12 (awarding one-third of attorneys' fees of $26,500,000 settlement); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding fees on a graduated schedule including 33.3% of the first $10 million of the settlement and 30% of the next $40 million); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee of $7.8 million settlement, is "well within the range accepted by courts in this circuit"); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding

6

attorneys' fees equal to 33% of $3 million fund).

Because Plaintiffs' request for one-third of the common fund as attorneys' fee is reasonable, falling within the range of fees awarded in the Second Circuit for comparable securities class actions, this Court should approve it.

### 2.    A Lodestar Cross-Check Supports the Reasonableness of the Attorneys' Fees Plaintiffs' Request

As an initial matter, for the reasons state above, this Court should not apply the lodestar method to award fees in this Action.[4] The dollar amount of Lead Counsel's lodestar exceeds the percentage of the fund Plaintiffs request. As such, awarding fees on the lodestar basis would reduce the amount of the Settlement Fund available for distribution.

Evaluating Lead Counsel's lodestar as a "cross-check" is appropriate. Here, that analysis confirms the reasonableness of the percentage of the fund Plaintiffs request as attorneys' fees. *See Goldberger*, 209 F.3d at 50. Lead Counsel (including attorneys, paralegals, and professional support staff) devoted a total of 643.36 hours to the prosecution of the Action, resulting in a lodestar of $500,645.00. ¶ 53; Ex. 2 ¶ 3. Based on a one-third fee (equal to $433,333.33), Lead Counsel's lodestar yields a multiplier of 0.87 – that is the percentage of the fund method entitles

---

[4] Courts calculate lodestar by multiplying the number of hours by current reasonable and customary hourly rate and totaling the amounts for all time-keepers. Applying current rates "compensate[s] for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989). Additionally, courts typically apply a multiplier when awarding fees under the lodestar method, representing "the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (citing *Goldberger*, 209 F.3d at 47); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors").

Lead Counsel to less in attorneys' fees than the lodestar method. ¶ 53. Courts in this Circuit have recognized that a lodestar that is greater than the percentage of the fund counsel will receive in supports the reasonableness of the fee request. *See In re Blech Sec. Litig.*, 94 CIV. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (awarding lead counsel 30% of the settlement, and confirming that the award was reasonable*); see also Spann v. AOL Time Warner*, No. 02 Civ. 8238DLC, 2005 WL 1330937, at *8-*9 (S.D.N.Y. June 7, 2005) (approving attorneys' fees of one-third of the settlement fund where "Lead Counsel's lodestar amount exceed[ed] by several thousand dollars the amount of fees requested as part of the Settlement Agreement"); *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F.Supp.2d 259, 271 (S.D .N.Y.2012) (approving requested fee with a negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (granting the lead counsel's 33% fee request, noting that "[t]he fee request is a negative multiplier of 0.70 of Plaintiffs' Counsel's lodestar. Such a multiplier is well below the parameters used throughout district courts in the Second Circuit, which affords additional evidence that the requested fee is reasonable").

Indeed, "that any reasonable fee would necessarily represent a negative multiplier of the lodestar supports an award at the higher end of the spectrum." *In re Sterling & Foster, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *2 (S.D.N.Y. June 17, 2002)) (In securities class action resulting in $3 million settlement fund, fee award based on a negative lodestar multiplier was fair and reasonable).

This Court should, therefore, apply the percentage of the fund method. The lodestar cross-check supports awarding Lead Counsel attorneys' fees of one third of the common fund and this Court should approve it.

**D.    Factors Courts in the Second Circuit Consider Support the Reasonableness of the Attorneys' Fees Plaintiffs Request**

The Second Circuit has set forth factors courts should consider when reviewing a request for attorneys' fees in a common fund case, including, (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, supports the reasonableness of Plaintiffs' attorneys' fee request.

**1.    The Time and Effort Expended Support the Requested Fee**

Lead Counsel devoted significant time and effort prosecuting this litigation and achieving the Settlement, supporting the requested fee. ¶ 31. For example, they thoroughly investigated Plaintiffs' claims, reviewing press releases, news articles, transcripts, and other public statements issued by or concerning Defendants, researching reports issued by financial analysts concerning Aterian's business and financial performance, and reviewing and analyzing Defendants' filings with the U.S. Securities and Exchange Commission ("SEC"). *Id*. Lead Counsel reviewed court dockets relating not only to Aterian, but to Culper Research, the short seller whose report alerted investors to issues about Aterian. *Id*. Lead Counsel transmitted a FOIA request to the SEC. *Id*. They analyzed Defendants' insider sales. *Id*. These efforts enabled Lead Counsel to draft several amended Complaint, culminating in the Third Amended Complaint, necessitated by Defendants amending their SEC Forms 4 to show more insider sales during the Class Period. *Id*.

As they prepared the Complaint, lead counsel worked with expert consultants to understand the theory of loss causation, the amount of damages, and the efficiency of the market for purposes of proving reliance. *Id*. Even after they filed the Complaint and awaited Defendants' pre-motion to dismiss letters, Lead Counsel continued investigating Aterian and monitoring news concerning Defendants. *Id*. Lead Counsel researched and responded to Defendants' pre-motion to dismiss letters, addressing complex issues of falsity, materiality, scienter, and loss causation. *Id*.

When the parties agreed to mediate a possible resolution to the case, Lead Counsel prepared a thorough mediation statement, asserting Plaintiffs' affirmative case and parrying defenses Defendants would raise at the motion to dismiss, class certification, and summary judgment motions that Parties would file. ¶¶ 25, 27, 31. They analyzed Defendants' mediation statements and damages analyses and, importantly, thoroughly studied Defendants' means of satisfying any judgment against them. *Id*. Lead Counsel participated with Lead Plaintiff Nolff in an 11-hours mediation session, followed by days of further negotiations to reach agreement in principle. ¶¶ 25,29. After executing a memorandum of understanding, Lead Counsel worked with Defendants' counsel and consulting experts to finalize the Settlement and the Plan of Allocation and to draft file with the Court the Preliminary Approval Motion (Dkt. Nos. 83-86). ¶¶ 27,28,31. In short, Lead Counsel zealously prosecuted this Action on behalf of Plaintiffs' and the Settlement Class, resulting in a recovery of between 13.9% to17.2% of total damages as the Company disclosed doubt about its ability to continue as a going concern.

The legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will be necessary to respond to Settlement Class Members' inquiries and conclude the claims process with a motion to distribute the Net Settlement Fund to Settlement Class Members. Lead Counsel will seek no additional compensation for this

10

work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended thus far and remaining work to oversee claims process and distribution), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

The time and effort Lead Counsel devoted to the Action secured the $1.3 million Settlement, supporting the reasonableness of the fee request.

> **2.      The Risk of Failure in Succeeding in the Action or Achieving a Greater Recovery Support the Attorneys' Fees Plaintiffs Request**
>
> **a)      The Contingent nature of Lead Counsel's Representation Supports the Attorneys' Fees Plaintiffs Request**

"[T]he risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

Courts in this Circuit have recognized that plaintiffs in class actions, particularly in securities class actions, face significant risks and uncertainties of success. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("[C]lass actions confront even more substantial risks than other forms of litigation."); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550,

11

at *27 (S.D.N.Y. Nov. 8, 2010) (securities class actions in particular are "notably difficult and notoriously uncertain."); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Plaintiffs in this Action faced material risks that are common to securities class actions. They – and Lead Counsel – also faced the material risk that "substantial doubt about [Aterian's] ability to continue as a going concern" persist and collectability of a greater judgment years in the future was in doubt. ¶ 49. The favorable Settlement result obtained through Lead Counsel's efforts eliminates the heightened risk that the Settlement Class could not be able to collect any portion of a judgment from Aterian even if successful at trial because Aterian, the sole source contributable to the Settlement, could become insolvent or file for bankruptcy any time during the course of the litigation. ¶¶ 31-50.

Further, courts have described as "misplaced" attorneys' confidence that they can predict with any degree of certainty the outcome of litigation. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971). A risk to counsel and plaintiff alike exists that a courts may reject a settlement only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* Indeed, in many cases, including some of Lead Counsel's cases, attorneys pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

This case was no exception. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. ¶ 55. In

undertaking that responsibility, Lead Counsel dedicated appropriate resources to prosecuting the Action and funded the expenses necessary to prosecute and to resolve the Action. *Id.* With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for firms paid on an ongoing basis. *See Flag Telecom*, 2010 WL 4537550, at *27. Indeed, Lead Counsel received no compensation from this case during the litigation and have incurred $23,892.16 in out-of-pocket expenses in prosecuting this action for the benefit of the Settlement Class. ¶ 54.

Despite the many uncertainties regarding the outcome of the case, Lead Counsel undertook this case on contingency, knowing that the litigation could last for years and would require substantial and a significant expenses. ¶¶ 33-40. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee, supporting the award of attorneys' fees Plaintiffs request. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b) The Material Risks of Failing to Establish Liability or Damages Support the Attorneys' Fees Plaintiffs Request

While Plaintiffs remain confident of their claims, their ability to prove their claims was far from certain. As detailed in the Goldberg Declaration, Defendants raised challenges in their pre-motion to dismiss letters, including to the falsity and materiality of the alleged misstatements, scienter, loss causation, and control person liability. ¶¶ 31,43. Plaintiffs recognize the strength of Defendants' arguments and understood the substantial risk that the Court could dismiss the

13

Complaint either at the pleading stage or summary judgment, leaving them with no recovery. Even if Plaintiffs survived Defendants' motion to dismiss, discovery would be costly, take years, and delay any potential recovery to Settlement Class Members. More, there is no guarantee that Plaintiffs would be able to obtain the necessary evidence to prove their case through discovery. ¶ 36. Therefore, whether Plaintiffs would ultimately prove liability was not assured.

More, with respect to damages, as the litigation progressed to class certification and summary judgment, Defendants would advance arguments that could materially reduce, if not eliminate, Plaintiffs' damages. ¶ 36,45-47. Defendants would never concede these points and would continue to press these defenses at summary judgment and trial. ¶ 45-47. The risks Lead Counsel assumed of failing to establish liability or damages supports the attorneys' fee award Plaintiffs request.

### 3. The Complexity of the Action Supports the Requested Fee

Courts recognize that securities class actions are "notorious[ly] complex[]." *AOL Time Warner*, 2006 WL 903236, at *8, a factor that supports an award of attorneys' fees.

This case was no exception. The factual and legal issues in this case were complex and included a significant number of alleged misrepresentations. Defendants contested falsity, scienter, loss causation and control person liability. More, complexity inheres in issues critical to the resolution of the substance of Plaintiffs' claims such as the existence and competence of artificial intelligence ("AI") to enhance Aterian's consumer products business. These are technical and complicated issues requiring expert testimony and the ability ultimately to simply explain them for the finder of fact. Additionally, to establish damages here, Plaintiffs would have to retain an expert to disaggregate damages from non-fraud related impact on Aterian's security prices. More, to certify a class under Section 10(b), Plaintiffs would have to establish that the market for Aterian securities was efficient. These also are technical and complicated issues common to securities class

14

actions.

Prosecuting the Action required not only skill and dedication, but focus to understand the complex substance of this case. *City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."). Accordingly, the magnitude and complexity of the Action supports the requested fee.

### 4. The Quality of Lead Counsel's Representation of Plaintiffs and the Putative Class Supports the Attorneys' Fees Plaintiffs Request

The best evidence of the quality of representation Lead Counsel provided is the recovery it achieved in light of obstacles presented. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *Global Crossing*, 225 F.R.D. at 467. Here, the Settlement provides a substantial recovery of $1.3 million – representing 13.9% to 17.2% of total damages – a favorable result for the Settlement Class in light of the serious risks of continued litigation against a company with a substantial doubt as a going concern. *See EVCI*, 2007 WL 2230177, at *17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."). According to Cornerstone Research, in 2021, for cases with maximum damages of less than $25 million, like this one, the median recovery was 12.5%.[5]

Lead Counsel respectfully submits that the quality of their efforts in the Action, together with their substantial experience in securities class actions and commitment to providing the Settlement Class with the best possible representation, provided leverage necessary to negotiate the Settlement. *See* Ex. 5, Rosen Law Firm Resume. Lead Counsel's experience and reputation

---

[5] Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 6 (Cornerstone Research 2022), available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

helped the Settlement Class achieve this $1.3 million recovery even though Plaintiffs faced significant risks in this litigation, including the very real risk that the Complaint may be dismissed.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See*, *e.g.*, *Veeco*, 2007 WL 4115808, at *7 (Among factors supporting award of requested attorneys' fees was that defendants were represented by "one of the country's largest law firms."); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd,* 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from Clarick Gueron Reisbaum LLP, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and Stein Adler Dabah & Zelkowitz LLP with highly-skilled securities practitioners who vigorously represented the interests of their clients.

Notwithstanding formidable opposition, Lead Counsel zealously prosecuted the Action vigorously, enabling them to achieve the favorable Settlement and supporting the attorneys' fees Plaintiffs request.

### 5.    The Attorneys' Fees Plaintiffs Request in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3 (internal quotation omitted). As discussed in detail in Section III C 1, above, the requested one-third fee is within the range of percentage fees that courts in the Second Circuit have

16

awarded in comparable cases. Accordingly, the attorneys' fees Plaintiffs request is reasonable in relation to the Settlement, supporting this Court's approval.

6.    **Public Policy Considerations Support the Attorneys' Fees Plaintiffs Request**

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur only if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (Private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). The integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the

17

attorneys' fees requested here. *See In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC'").

Public policy, therefore, supports Plaintiffs' attorneys' fee request.

### 7. The Reaction of the Settlement Class Supports the Attorneys' Fees Plaintiffs Request

A positive reaction of the Settlement Class also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 (Lack of or few objections "is one of the most important factors in determining the reasonableness of a requested fee.").

To date, the Claims Administrator has caused over 34,000 potential Settlement Class Members to receive direct notice of the Settlement. Ex. 1 ¶¶ 6-8. While the time to object does not expire until August 19, 2021, no Settlement Class Member has objected to the Settlement, the Plan of Allocation, or Plaintiffs' request for attorneys' fees. Ex. 1 ¶14.[6]

Together with the other *Goldberger* factors, the absence of any objection to the Settlement, the Plan of Allocation, or Plaintiffs' attorneys' fee request supports Court approval.

### E. This Court Should Approve Reimbursement of Lead Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained

Lead Counsel also requests reimbursement of $23,892.16 of expenses incurred while prosecuting the Action. "Courts routinely grant the expense requests of class counsel." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *18 (E.D.N.Y. Sept. 18, 2007) (quoting *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *18 (E.D.N.Y. Sept. 30, 2005)); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted

---

[6] Should any Settlement Class Member object, Plaintiffs will respond in their reply papers.

18

that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *see also In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding payment of $100,000 in litigation expenses).

The majority of the expenses Lead Counsel advanced were for professional services to investigators, consulting experts, and mediation services. Ex. 2 ¶ 5. The remaining expenses are attributable to the costs of, among other things, press releases to communicate to potential Settlement Class Members and legal and factual research. *Id.* These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities class action. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."); *see also In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (awarding "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

For those reasons, the Court should award Lead Counsel $23,892.16 of unreimbursed expenses.

F.     **The Court Should Approve Compensatory Awards to Plaintiffs**

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in this Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the

19

action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Plaintiffs dedicated time to the successful prosecution of the Actions by, among other things: monitoring news on the company, reviewing pleadings filed in the Action, participating in discussions with Lead Counsel regarding the litigation and settlement negotiations, and evaluating and approving the Settlement. *See* Ex. 3 (Declaration of Joseph Nolff) and Ex. 4 (Declaration of Bruce Palenske).

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). As compensation, this Court should grant Plaintiffs' requests in the amount of $13,000 in aggregate, comprised of $10,000 to Lead Plaintiff Joseph Nolff and $3,000 to Named Plaintiff Bruce Palenske, as reimbursement for their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.*; *see also In re Bank of Am. Corp.* 772 F.3d at 132 (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Gilat,* 2007 WL 2743675, at *19 (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those

20

employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) award Lead Counsel reasonable attorneys' fees in the total amount of one third of the Settlement Amount (or $433,333.33), (b) reimburse Lead Counsel for expenses and costs in the amount of $23,892.16, and (c) reimburse Plaintiffs for services rendered to the Settlement Class in the amount of $10,000 to Lead Plaintiff Joseph Nolff and $3,000 to Named Plaintiff Bruce Palenske.[7]

Dated: August 12, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Jacob A. Goldberg*
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Email: jgoldberg@rosenlegal.com

Jing Chen
275 Madison Avenue, 40th floor
New York, NY 10016
Telephone: (212) 686-1060
Email: jchen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

---

[7] Plaintiff's [Proposed] Final Judgment Approving Class Action Settlement, including the proposed order granting an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, was previously filed as Ex. B to the Settlement Stipulation. (*See* Dkt. No. 86-6.)

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg