**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOSEPH P. NOLFF, ANDREW TATE and BRUCE PALENSKE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATERIAN, INC., YANIV SARIG, FABRICE HAMAIDE, and ARTURO RODRIGUEZ,<br><br>Defendants. | **CASE No.: 1:21-cv-04323-VM** |

## DECLARATION OF JACOB A. GOLDBERG

I, Jacob A. Goldberg, declare the following to the best of my knowledge pursuant to 28 U.S.C. §1746: [1]

1.      I am an attorney duly licensed to practice law in New York and before this Court. I am a partner of the law firm of The Rosen Law Firm, P.A. ("Rosen Law"), court-appointed Lead Counsel for Lead Plaintiff Joseph Nolff ("Nolff") and Named Plaintiff Bruce Palenske ("Palenske", together with Nolff as "Plaintiffs") and the Settlement Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I have thirty (30) years of experience, focusing on securities class actions, corporate fiduciary duty cases, and ERISA class actions.

2.      I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated April 22, 2022. (Dkt. No. 86).

1

Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. I set forth herein relevant facts concerning the investigation, litigation, and negotiations that led to the Settlement with Defendants Aterian, Inc. ("Aterian"), Yaniv Sarig ("Sarig"), Fabrice Hamaide ("Hamaide"), and Arturo Rodriguez ("Rodriguez") (collectively, "Defendants," and with Plaintiffs, "Settling Parties"). I also set forth herein relevant facts supporting both that the Settlement is fair, reasonable, and adequate and Plaintiffs' requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable.

3.      The Settlement provides for a cash payment by and on behalf of Defendants in the amount of $1,300,000 in exchange for full releases of Plaintiffs' claims, completely resolving the Action.

4.      On May 4, 2022, the Court entered an order, preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members ("Preliminary Approval Order", Dkt. Nos. 87,88).

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Rosen Law of one-third of the Settlement Fund (or $433,333.33), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $23,892.16, and service awards to Plaintiffs, totaling $13,000.

6.      Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.").

7.     Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Jacob A. Goldberg on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Goldberg Fee Decl.").

8.     Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Joseph Nolff ("Nolff Decl.").

9.     Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Bruce Palenske ("Palenske Decl.").

10.    Attached hereto as Exhibit 5 is a true and correct copy of the firm resume of The Rosen Law Firm, P.A. ("Rosen Law Firm Resume").

11.    Attached as Exhibit 6 is a true and correct copy of peer firm billing rates ("Peer Firms Billing Rates").

12.    Attached as Exhibit 7 is a true and correct copy of the Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review, published by NERA on January 25, 2022 ("NERA Report").

**Procedural History**

13.    This Action commenced on May 13, 2021, with the filing of a putative class action complaint in this Court asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Aterian, Yaniv Sarig, and Fabrice Hamaide. (Dkt. No. 1).

14.    On June 10, 2021, the related action *Coon v. Aterian, Inc., et al.*, case no. 1:21-cv-05163-VM, was filed, alleging substantially similar facts and claims under the Exchange Act against the same defendants with the same class period.

15.    On July 12, 2021, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Nolff moved to consolidate the two related actions and be appointed Lead Plaintiff.

(Dkt. No. 17). After briefing on competing motions seeking consolidation and appointment of lead plaintiff and lead counsel, on August 10, 2021, the Court consolidated the pending actions, appointed Nolff as Lead Plaintiff, and appointed Rosen Law as Lead Counsel. (Dkt. No. 47).

16.    Upon his appointment, Lead Plaintiff, through Rosen Law, further investigated the claims in this action by, among other things, searching for and reviewing public information about Aterian such as United States Securities and Exchange Commission ("SEC") filings, press releases, news articles, transcripts, and other public statements issued by or concerning Defendants. We also reviewed research reports and notes of financial analysts concerning Aterian's business and financial performance, reviewed docket entries from a civil action against the Culper Research, and requested documents concerning regulatory actions involving Defendants, including inquiries to the SEC for access to administrative proceedings and investigations regarding Aterian pursuant to the Freedom of Information Act (FOIA). With the help of expert consultants, we also performed economic analyses of securities movements and pricing data and damages analysis. Last, we retained an investigator to locate witnesses and conduct interviews.

17.    On November 1, 2021, counsel for Defendants Aterian, Sarig and Hamaide consented to accepting service on behalf of Rodriguez. (Dkt. No. 63).

18.    On November 3, 2021, in light of findings of new evidence from continued investigation and with Defendants' consent and the Court's approval, Plaintiffs filed the Second Amended Complaint. (Dkt. No. 66).

19.    In response to Defendants' late-2021 amendments to Forms 4 filed with the SEC, revising previous disclosures about insider trades during the Class Period and with Defendants'

agreement, on January 5, 2022, Plaintiffs filed the operative Third Amended Complaint ("Complaint"). (Dkt. No. 75).

20.    On January 17, 2022, pursuant to this Court's Individual Practices, Defendants transmitted to Plaintiffs their pre-motion to dismiss letters, summarizing their assertions with legal support that the Complaint failed adequately to plead securities fraud, and concluding that this Court would dismiss the case.

21.    On February 7, 2022, Plaintiffs transmitted to Defendants their letters, responding to Defendants' pre-motion letters, supporting the Complaint's sufficiency and asserting that the Court would sustain the Complaint's adequacy.

22.    On March 17, 2022, the Parties informed the Court that they had reached a settlement, in principle and informing the Court of a schedule for Plaintiffs to present the Settlement to the Court for preliminary approval. (Dkt. No. 79.)

23.    On March 18, 2022, the Court approved the Parties' stipulation and proposed order, staying the case pending Plaintiffs' moving for preliminary approval of the Settlement. (Dkt. No. 81).

**Nature of the Allegations in the Complaint**

24.    Aterian purports to sell consumer products on online platforms such as Amazon. The Complaint alleges that during the Class Period, Defendants misrepresented that Aterian's proprietary artificial intelligence ("AI") platform, AIMEE, enabled Aterian rapidly and successfully to identify and to monetize product opportunities and to initiate and to manage marketing, sales, and fulfillment. The Complaint alleges AIMEE was not AI, but rather an Excel spreadsheet that Aterian employees manually launched and operated. The Complaint further alleges that AIMEE's failure disabled Aterian from growing its business organically, as

Defendants promised, and prompted Defendants to acquire assets to boost revenue. According to the Complaint, when the Culper Report exposed the truth, Aterian stock price plunged, damaging Aterian investors.

### Settlement Negotiations and Terms

25.   In January 2022, while continuing to litigate the Action, the Settling Parties agreed to mediate resolution of the Action. On March 9, 2022, the Settling Parties, including Lead Plaintiff Nolff, participated in a mediation session via Zoom with Mr. Robert A. Meyer of JAMS, a nationally-recognized mediator with substantial experience mediating securities fraud class action.

26.   In advance of the mediation, the Settling Parties prepared and exchanged detailed mediation statements, including their respective analyses of damages and loss causation.

27.   After 11 hours of arm's-length negotiations, the Settling Parties did not reach any agreement. The Settling Parties continued negotiating for days with Mr. Meyer's assistance, reaching a settlement, in principle, on March 16, 2022. (*See* Dkt. No. 79.)

28.   On March 17, 2022, the Settling Parties executed a Memorandum of Understanding broadly setting forth the terms of the Settlement, in principle. (*Id.*) The Settling Parties alerted the Court to the Settlement, in principle (*id.*), and, on March 18, 2022, the Court ordered a stay of all proceedings, pending its consideration of Plaintiffs' anticipated motion for preliminary approval of the Settlement (Dkt. No 81). On May 4, 2022, Plaintiffs moved the Court for the entry of an order preliminarily approving settlement and establishing notice. (Dkt. Nos. 83-86.)  On May 5, 2022, the Court entered the Preliminary Approval Order. (Dkt. Nos. 87,88.)

29.   The Settlement provides for a cash payment of $1,300,000 to pay the Settlement Class's claims. Under the best-case scenario – assuming Plaintiffs overcome all the obstacles noted below and Defendants do not prevail on any of their arguments – Plaintiffs' maximum damages

potentially recoverable are $9.36 million. The $1.3 million Settlement represents 13.9% to17.2%
of the Settlement Class's best-case, maximum recoverable damages. If the Court grants final
approval of the Settlement, Plaintiffs and all Settlement Class Members who remain in the Class
will forever release their claims against Defendants that were alleged or could have been alleged
in this Action.

30.     Requests for exclusion and objections to the Settlement must be received by August
19, 2022. To date, neither the Claims Administrator nor Rosen Law has received any objections
to any aspect of the Settlement, including the Settlement, itself, the Settlement Class, the Plan of
Allocation, or payment of attorneys' fees and expenses from the Settlement Fund. Ex. 1 ¶ 14.
While the Claims Administrator received one request for exclusion, the exclusion request is invalid
because the individual did not submit his request by the means required by the Court-approved
Notice of Pendency and Proposed Settlement of Class Action ("Long Notice", Dkt. No. 88), did
not provide the information required to determine whether he is a member of the Settlement Class,
and have not responded to the Claim's Administrator's follow-up inquiry for the required
information. Ex. 1 ¶ 13. Accordingly, to date there have been no valid requests for exclusion from
Settlement Class Members.  The Long Notice, as the Court approved it in the Preliminary Approval
Order, describes the Plan of Allocation. (Dkt. No. 88, at 6-8); *see also* Ex. 1, Ex. A, at 5-8. With
Court appointed Claims Administrator SCS, Rosen Law formulated the Plan of Allocation for
distributing the Settlement Fund fairly and reasonably to Settlement Class Members consistent
with the federal securities laws. To that end, the Plan of Allocation does not compensate losses
resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged revelation
of the truth. The Plan of Allocation also accounts for the relative strengths of the theories alleged
in the Complaint. The Plan of Allocation then establishes a formula for determining authorized

claimants' recognized losses based on the date and price at which the Settlement Class Member purchased and sold Aterian securities, in accordance with the securities laws and Plaintiffs' theories of the case.

**Complexity, Expense and Likely Duration of the Litigation**

31.     Over the course of this litigation, on behalf of Plaintiffs and the Settlement Class, Rosen Law devoted significant time and effort prosecuting this action, including, among other work:

- investigating and analyzing the allegations in preparing complaints in the Action, including, among other means:
    - reviewing press releases, news articles, earnings call transcripts, and other public statements issued by or concerning Defendants;
    - researching reports issued by financial analysts concerning Aterian's business and financial performance;
    - extensive review and analyses of Defendants' filings with the SEC;
    - review of docket entries from civil actions involving Defendants filed in courts around the country;
    - review of docket entries from a civil action against the Culper Research;
    - requesting documents concerning regulatory actions involving Defendants, including inquiries to the SEC for access to administrative proceedings and investigations regarding Aterian pursuant to the Freedom of Information Act (FOIA).
    - performing economic analyses of securities movements and pricing data;
    - engaging a damages consulting expert to analyze damages;

- o  retaining a private investigator to locate witnesses and conduct interviews; and

- o  effecting service on Defendants;

- continuing the investigation described above and monitoring news concerning Defendants, resulting in the preparation of the Second Amended Complaint and the Complaint;

- analyzing, researching, and opposing Defendants' pre-motion to dismiss letters, addressing complex issues on falsity, materiality, scienter, loss causation, and control person liability;

- consulting with expert consultants on damages and loss causation issues in connection with Plaintiffs' claims to prepare for settlement negotiations;

- engaging in good faith, arm's-length negotiations, leading to the Settlement, including:

  - o  negotiating the mediator;

  - o  drafting Plaintiffs' mediation statement;

  - o  analyzing Defendants' mediation statements and damages analyses;

  - o  analyzing Defendants' financial status regarding the source of funding the potential settlement;

  - o  preparing for and participating in an all-day 11-hour mediation overseen by Mr. Meyer of JAMS;

  - o  participating in additional negotiations resulting in the Settlement, including favorable Settlement fund payment terms;

  - o  negotiating and drafting the Settlement Stipulation and related settlement documents;

- preparing Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and related documents;

- working with consulting experts to prepare the Plan of Allocation; and

- overseeing the notice process that the Court approved.

32.     Thus, before entering into the Settlement, Rosen Law and Plaintiffs had a thorough understanding of the strengths and weaknesses of their case.

33.     Without a Settlement, Plaintiffs face protracted and expensive litigation that could drag the Action on for years.

34.     While Plaintiffs and Rosen Law believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. Complex issues related to scienter, loss causation, and damages, among others, are prevalent here. The Complaint primarily alleges that Defendants misrepresented its AIMEE platform as possessing AI capabilities while in truth AIMEE merely was an Excel spreadsheet that Aterian manually operated. To establish such misrepresentation and associated scienter, Plaintiffs must hire a qualified expert or experts in the artificial intelligence industry to thoroughly analyze AIMEE and related documents and communications and opine on the issue of whether AIMEE possessed any AI capabilities during the Class Period. This is a highly technical, complicated, expensive and time-consuming task.

35.     Additionally, to establish damages here, Plaintiffs would have to retain an expert to disaggregate damages resulting from the information contained in the Culper Report unrelated to the AIMEE misrepresentations and related acquisitions and from non-fraud related market forces that may have caused Aterian securities' price to drop. Moreover, to certify a class under Section 10(b), Plaintiffs would have to establish that the market for Aterian securities was efficient. These tasks also are highly technical and complicated. When the Settlement was reached, Defendants had not filed their motions to dismiss. As reflected in their initial pre-motion to dismiss letters, however, Defendants intended to contest all critical elements of Plaintiffs' claims.

36.     Even if Plaintiffs had defeated Defendants' motions to dismiss, which was uncertain, no guarantee exists that Plaintiffs would have been able to obtain the necessary evidence to prove their case through discovery. Even if they could, proceeding after it would be costly, take years, and delay any potential recovery to Settlement Class Members. Defendants would present loss causation and damages defenses, which may have found favor with the Court at summary judgment or the jury at trial. Defendants have argued and would continue to argue that, based on the fact that only 1 out of the 20 pages of the Culper Report covered the AIMEE software, a key issue relating to the alleged fraud in the Action, damages here, if any, are a mere fraction of what Plaintiffs claim.

37.     Moreover, Plaintiffs still had to achieve class certification, withstand summary judgment and pre-trial motions, prepare for and obtain a verdict in a lengthy jury trial on liability, litigate post-trial motions and bifurcated trials on damages, and withstand lengthy appeals.

38.     Experts would be needed to opine on, at minimum, AIMEE's AI capabilities, market efficiency, loss causation, and damages, adding substantially to Plaintiffs' litigation costs.

39.     Even if Plaintiffs could recover an equally large judgment after a trial *and* recover from Defendants – both of which are far from certain given the risks discussed herein – the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, further reducing its value.

40.     Indeed, securities class actions are inherently complex and expensive to litigate, and this one is no exception.

**<u>Risks of Continued Litigation</u>**

41.     The Settlement provides for a cash payment of $1,300,000. As explained below, this case presents material risks that Plaintiffs and the Settlement Class might recover nothing at all – or substantially less than the Settlement Amount – if the case proceeded.

42.     At the time the Settlement was reached, the Defendants had not filed their motions to dismiss. The PSLRA imposes heightened pleading standards for securities fraud cases. Plaintiffs were cognizant of the very real and substantial risk that the Complaint may be dismissed. *See* Ex. 7, at 14 ("Of the securities class action cases filed and resolved between 1 January 2012 and 31 December 2021, a motion to dismiss was filed in 96%. Among those, a decision was reached in 73% of cases. Of the cases with a decision on a motion to dismiss, approximately 56% were granted while only 19% were denied.").

43.     For example, in their pre-motion to dismiss letters, Defendants challenged the sufficiency of Plaintiffs' claims, including that Defendants' misstatements were not materially misleading, that the alleged misrepresentations were forward looking statements protected by the PSLRA and statements of opinions and puffery, that Defendants did not act with the requisite scienter and that the complaint failed to allege loss causation. Without a settlement, Plaintiffs face the very real risk that Defendants might prevail on their motions to dismiss. The Settlement avoids the risk that Plaintiffs' Complaint may be dismissed, leaving Plaintiffs with nothing.

44.     Even if the Complaint had survived Defendants' motions to dismiss, there is no guarantee that Plaintiffs would have been able to obtain the necessary evidence to prove their case through summary judgment, much less through trial. If the Court were to grant Defendants' motions for summary judgment, then Plaintiffs would have spent years, thousands of attorney

hours, hundreds of thousands of dollars (if not more) in costs, and much judicial resources, and still get nothing.

45.     Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a complicated concept. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

46.     Establishing the maximum amount of the alleged damages in this case would be particularly difficult. Defendants have argued and would continue to argue that, based on the fact that only 1 out of the 20 pages of the Culper Report covered the AIMEE software, a key issue relating to the alleged fraud in the Action, damages here, if any, are a fraction of what Plaintiffs claim.

47.     If at any of these stages the Court or jury found Plaintiffs' damages expert and theory legally or factually insufficient, Plaintiffs would have spent much more time and money to end up with less than the $1,300,000 recovery, or nothing.

48.     Had the Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to demonstrate that Aterian's securities traded on an efficient market and that there was a common methodology to calculate damages for the Settlement Class. Class certification is typically vigorously opposed by defendants in securities class actions.

49.     Even if Plaintiffs defeat Defendant's motion to dismiss, complete discovery, obtain class certification, prevail over Defendants' motion for summary judgment, and win at trial,

Material doubt exists that Defendants can withstand a greater judgment. According to its Form 10-Q filed on August 8, 2022, as of June 30, 2022, the Company had total cash and cash equivalents of $34.8 million and an accumulated deficit of $488.0 million. In addition, the Company's net loss and net cash used in operating activities amounted to $59.1 million and $22.1 million, respectively, for the six months ended June 30, 2022 and there was "substantial doubt about [Aterian's] ability to continue as a going concern".[2]

50.     The Settlement eliminates the expense and delay of continued litigation, the depletion of limited accessible resources for settlement funds, and the risk that the Settlement Class could receive no recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

51.     Lead Counsel are experienced with a track record of successfully litigating securities class actions throughout the country, including in the Southern District of New York. *See* Ex. 5, Rosen Law Firm Resume.

52.     High caliber counsel at Clarick Gueron Reisbaum LLP, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and Stein Adler Dabah & Zelkowitz LLP, with experience defending securities class actions represented Defendants. Given these factors, Lead Counsel believe that the Settlement is fair, adequate, and reasonable and urge this Court to approve it.

**Lead Counsel's Fee Request is Justified**

53.     Rosen Law has worked diligently to achieve the Settlement, expending 643.36 hours for a lodestar value of $500,645.00. Ex. 2 ¶ 3. The attorneys' fees Plaintiffs request is 0.87

---

[2] https://www.sec.gov/ix?doc=/Archives/edgar/data/1757715/000156459022028487/ater-10q_20220630.htm

of Lead Counsel's lodestar. The rates Rosen Law billed for their attorneys are comparable to peer plaintiff and defense firms litigating similar matters. *See* Ex. 6, Peer Firms Billing Rates.

54.     Rosen Law spent a total of $23,892.16 in unreimbursed expenses in connection with the prosecution of this Action. Ex. 2 ¶ 5. To date, Rosen Law has received no compensation for its efforts on behalf of Plaintiffs and the Settlement Class.

55.     From the outset, Rosen Law embarked on a complex, expensive, and likely lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiffs and the Settlement Class. In undertaking that responsibility, Rosen Law ensured that sufficient resources were dedicated to the action and that funds were available to compensate staff and to cover the expenses the case would require.

56.     The hourly rates Rosen Law used to arrive at its lodestar calculation are current. Ex. 2 ¶ 3.

57.     Rosen Law's work will not end with the final approval of the Settlement. Rosen Law will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the September 9, 2022, Settlement Fairness Hearing, overseeing the claims process, and distributing the Settlement Fund to Settlement Class Members.

**The Requested Award to Plaintiffs is Justified**

58.     For approximately two years, Plaintiffs have spent time leading this action on behalf of the Settlement Class. Plaintiffs request an amount of $13,000 (comprised of $10,000 to Lead Plaintiff Joseph Nolff and $3,000 to Named Plaintiff Bruce Palenske) to compensate them for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

59.     Plaintiffs have devoted a substantial amount time to this case, including time monitoring news on Aterian, reviewing all significant pleadings and other key litigation materials

filed in this Action, and communicating and corresponding with Rosen Law throughout the pendency of the Action regarding the litigation and settlement. *See* Ex. 3; Ex. 4.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12ᵗʰ day of Augus, 2022, in Jenkintown, Pennsylvania.

*/s/  Jacob A. Goldberg*
Jacob A. Goldberg

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2022, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ Jacob A. Goldberg
Jacob A. Goldberg